No.  89-407

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ASSOCIATION OF UNIT OWNERS OF THE
DEER LODGE CONDOMINIUM; LARRY BURNSIDE;
MARY BURNSIDE; MEL'S REMODELING, INC.;
ROBERT TOUSIGNANT; GERALD TEREICH;
CAROLYN TEREICH; BRUCE J. HEDBLOOM;
EMIL ESCHENBURG; DOLLY ESCHENBURG;
RAYMOND D. RYAN; ERNEST M. SHEWCHUK;
MURRAY B. STEVENS; W. KEITH STINSON;
SALLY STINSON; JAMES VANDERBIESEN;
NORMAN WECKERLY; TOMKINS, ULRICH &
ROLL; ADRIAN BOM; WILLIAM BRUNSDALE;
ROBERT GARRITY; FRANK LIEBER; DONALD
K. MILLER; WILLIAM WOOD; DONNA WOOD;
and RICHARD WINCHELL,

      Plaintiffs and Appellants,

      v.

BIG SKY OF MONTANA, INC.; BIG SKY OF
MONTANA REALTY, INC.; BOYNE USA, INC.;
THOMAS & CO. (GENERAL ELECTRIC PENSION
TRUST); THE MONTANA POWER COMPANY;
THE STATE OF MONTANA,

      Defendants and Respondents.



FILED

SEP 24 1990

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
             In and for the County of Madison,
             The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

      Michael C. Coil, Bozeman, Montana

      For Respondents:

            Patrick Fleming, Butte, Montana; Rockwood Brown,
            Billings, Montana; Allen B. Chronister, Chronister,
            Driscoll & Moreen, Helena, Montana; Page Wellcome,
            Wellcome, Frost & Barrett, Bozeman, Montana; John
            S. Warren, Schulz, Davis & Warren, Dillon, Montana;
            Patrick Frank, Worden, Thane & Haines, Missoula,
            Montana.

Submitted: June 12, 1990

Decided: September 24, 1990

Filed:

_(signature)_

Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

The plaintiffs (unit owners) sued to recover damages resulting from two fires in 1981 in two buildings comprising the Deer Lodge Condominiums at Big Sky, Montana. The District Court, Fifth Judicial District, Madison County, entered summary judgment against the unit owners and in favor of the defendants. The unit owners have appealed the summary judgment against them in this cause. We affirm the summary judgment.

To follow the complicated facts herein, the reader would do well to refer to the following outline of the parties involved:

Unit Owners   All but four of the appellants are owners of condominiums at Big Sky, Montana, located in two buildings, both commonly known as the Deer Lodge Condominiums. The four appellants who did not own condominiums owned personal property located in units of the Deer Lodge Condominiums. Except where necessary to distinguish the four personal property owners, all appellants are hereinafter referred to as "unit owners."

Big Sky of Montana Inc., (Big Sky)   A corporation which originally developed the Big Sky, Montana, ski resort in the early 1970s and merged in 1978 with another corporation to form Boyne USA., Inc., hereinafter referred to as "Big Sky."

Big Sky of Montana Realty, Inc. (Realty)   A corporation organized in 1976 to manage and liquidate certain real property at Big Sky formerly owned by Big Sky, including the Deer Lodge Condominiums, hereinafter referred to as "Realty." Realty performed significant repairs to the Deer Lodge Condominiums in 1976.

Boyne Mountain Lodge, Inc.   A corporation that acquired the Big Sky ski resort facilities and 39 units of the Deer Lodge Condominiums in 1976.

Boyne USA, Inc. (Boyne)   A corporation and the current

2

owner of the Big Sky ski resort. Boyne is the product of a 1978 merger of Big Sky and Boyne Mountain Lodge, Inc.

<u>Thomas & Co. (General Electric Pension Trust)</u>  One of seven stockholders of Big Sky and Realty.

<u>The Montana Power Company</u>  One of seven stockholders of Big Sky and Realty.

<u>The State of Montana</u>  The governmental entity responsible for enforcement of building and fire codes at Big Sky, Montana.

<u>Bruce A. Houston</u>  The State's fire inspector who investigated two fires which occurred in 1981 in the Deer Lodge Condominiums.

<u>Association of Unit Owners of the Deer Lodge Condominiums (Association)</u>  An incorporated Association comprised of the owners of the condominium units. The Association itself is a party plaintiff in this action.

<u>Lloyd W. Darg and Associates (Darg)</u>  Construction engineer, Deer Lodge Condominiums.

<u>Douglas A. Moe, Architects (Moe)</u>  Architect, Deer Lodge Condominiums.

Big Sky constructed the Deer Lodge Condominiums in 1973-1975. Darg was the construction engineer, and Moe the architect for the project. In 1976, Big Sky's shareholders negotiated the sale of their stock to Boyne Mountain, Inc. Because Boyne Mountain did not want to acquire stock in a corporation with real estate development assets, Big Sky transferred its real estate development assets to Big Sky Realty, a corporation newly formed on May 6, 1976, in exchange for its stock. The real estate development assets included 44 unsold units of the Deer Lodge Condominiums. Big Sky then distributed its Big Sky Realty stock to the original Big Sky shareholders.

Realty sold 39 of its 44 Deer Lodge Condominium units to Boyne

3

Mountain Lodge Inc. on December 1, 1976. Realty sold its remaining five Deer Lodge Condominium units during an auction in 1977. None of the unit owners purchased their units from Realty.

In 1978, Big Sky and Boyne Mountain Lodge, Inc. merged to become Boyne USA, Inc. Boyne is the current owner of Big Sky Resort.

Significant structural and safety deficiencies in the construction of Deer Lodge Condominiums were discovered in early 1976. The Association and unit owners were first notified of the deficiencies on April 1, 1976. Realty employed the engineering firm of Morrison-Maierle of Helena, Montana, to investigate and report concerning the structural and safety deficiencies at the condominiums. Realty notified each unit owner of the Morrison-Maierle findings on September 12, 1976. On September 22, 1976, Realty provided the chairman of the Association with a copy of the Morrison-Maierle report describing the structural deficiencies. The Association, through its board of directors, acknowledged receipt of the notice of the structural deficiencies, and thereafter authorized Realty to perform the work required to correct the deficiencies.

Realty made the repair effort during 1976-77. The repairs at that time cost approximately $1.4 million. There is no record that the fireplaces in the condominiums were repaired or reconstructed during the 1976-77 reconstruction or repair effort. However, in a letter dated December 24, 1976, the president of Realty advised the unit owners that the condominiums had been satisfactorily

4

repaired, and were sound and safe for occupancy.

Two fires occurred at the Deer Lodge Condominiums located at Big Sky, one on January 20, 1981, and one on February 20, 1981.

The deficiencies in the fireplaces related to lack of fire stops, improper or missing chimney connections, improper or lack of insulation around the chimney flues and throughways; and particularly, a failure to install a tin sheet protective covering over plywood at the base of the hearths. The purpose of the tin sheet was to guard against sparks which might work their way down through the mortar of the hearth to the plywood. Unit owners contend that the fires principally were ignited because of lack of the tin sheet protection.

The repairs instigated by the Morrison-Maierle report were completed and the condominiums reoccupied prior to the fires. The record does not show that the fireplace deficiencies were corrected in those repairs.

This action, seeking damages resulting from the fires and the fireplace deficiencies was filed on January 18, 1983. Certain of the original defendants named in the action were improperly served with process. The facts relating to the improper service and the resultant dismissal of certain of the defendants are chronicled in the first appeal to this Court, Association of Unit Owners et al. v. Big Sky of Montana, Inc. et al. (1986), 224 Mont. 142, 729 P.2d 469.

After the fire litigation started, the unit owners were advised that the buildings contained other structural defects of

a serious nature. A second lawsuit involving many of the same parties was filed on November 1, 1984. That case was known to the parties as the "Structure" case. This action was known to them as the "Fire" case.

The Structure case came to this Court in a proceedings for supervisory control in State ex rel. Boyne USA, Inc. v. District Court of Fifth Judicial District (1987), 228 Mont. 314, 742 P.2d 464. In that original proceedings, this Court directed that the Structure case proceed as a class action on the part of the unit owners as plaintiffs.

On February 26, 1987, the District Court entered a stay order prohibiting any further action in the Fire case. The District Court allowed the Structure case to proceed. On May 28, 1985, the unit owners in the Fire case made a motion to consolidate the fire case with the Structure case. The motion to consolidate was denied by the District Court on July 8, 1985.

Thereafter the Structure case was pursued to settlement and was never tried on the merits. Two of the defendants in the Structure case, Darg and Moe, were granted summary judgment in their favor on November 12, 1986, and May 15, 1987, respectively. Motions for summary judgment made by Realty and by Boyne were denied by the District Court.

When the Structure case was finally settled, the District Court allowed the Fire case to proceed again. However, substantial discovery, including depositions, affidavits, and thousands of pages of exhibits had been compiled in the Structure case during

the discovery phase. On motion of Realty in the Fire case, the District Court ordered that it would take judicial notice of the pleadings and discovery in the Structure case.

The subject of attorney fees in the Structure case came before this Court in cause no. 89-502 (unreported), Association of Unit Owners, et al. v. Big Sky of Montana, Inc. et al., Opinion dated April 9, 1990. It is not otherwise pertinent here.

There are other facts interrelating the Fire case and the Structure case, to which we will advert in discussing the issues. It should be noted, however, that the State of Montana and Bruce Houston were not defendants in the Structure case. They were named as defendants in the Fire case on the contention of unit owners that Houston, as a fire inspector for the State of Montana, failed to report the numerous defects in the fireplaces found by later experts subsequent to the second fire of February 20, 1981.

The Deer Lodge Condominium buildings were, because of their deficiencies in design and construction, ultimately razed in 1988 as part of the settlement in the Structure case.

On appeal, the unit owners raise three issues:

1. Summary judgment was improperly entered by the District Court in favor of the defendants.

2. The District Court erred by refusing to grant the unit owners' motion to consolidate the cases.

3. The District Court improperly entered summary judgment for Bruce Houston and the State of Montana.

GENERAL REMARKS

7

In determining that the District Court properly granted summary judgment in this, the Fire case, the Court is largely influenced by the following factors:

a. <u>Identity of Parties</u>. All of the plaintiffs in the fire case, except for Mel's Remodeling, Robert Tousignant, Gerald Tereich and Carolyn Tereich, were plaintiffs in the Structure case.

b. <u>Apparent complete settlement in the Structure case.</u> In the court-approved settlement of the Structure case, the remaining defendants paid the sum of $3,526,857.32 to be allocated among the various unit owners. In addition, a part of the settlement included the agreement that the condominium buildings would be totally razed. This suggests that the totality of the buildings was defective. It is difficult to conceive that a claim for fire damages in a portion of the building survived a substantial money settlement and a demolition of the total buildings.

c. <u>Release</u>. In August, 1977, the trustees of the Association entered into a written release with Big Sky of Montana Realty, wherein Realty paid $54,000.00 toward the repairs of the building, and relinquished a claim for $22,259.46 in payments due from the Association. As part of the release, the Association waived "any claims they may have" against Big Sky of Montana, Inc. and its subsidiaries "arising out of the construction and sale of the condominium units known as Deer Lodge Condominium, such waiver and release to apply to all claims arising prior to and including the date of this settlement agreement."

We recognize that the covenants of Deer Lodge Condominium gave to the Association the right to enter the contracts or hire personnel for the management of the affairs of the Association and the maintenance and repair of the common areas of the buildings, and thus did not preclude individual claims by the unit owners. Nonetheless, the settlement in the Structure case was one which included the entire demolition of the condominium buildings and when approved by the District Court on July 25, 1988, the order provided that:

"Following compliance with the terms and conditions of this settlement order, this

8

cause shall be by a separate order <u>dismissed</u> <u>with prejudice</u>, each party to pay their or its own costs." (Emphasis added.)

d. <u>Dismissals of Darg and Moe</u>. In the course of the litigation in the Structure case, motions were made by the defendants Darg and Moe for summary judgment. Separately the District Court considered those motions and in each case granted the same.

In the Moe case, in finding of fact no. 4, the District Court found:

> 4. During the period of April 1, 1976 through September 28, 1976, the owners of the condominiums and the Plaintiffs were repeatedly notified of and became aware of the deficiencies and defects in the condominiums. Such notices and knowledge were sufficient to put them on notice that they had been damaged and injured.

When the District Court considered the Darg motion for summary judgment, it made the following findings:

> 3. The Plaintiff-Owners of the condominiums became aware in 1976, of what was termed "significant structural defects." The Plaintiffs' complaint alleges that they were advised and informed of the defects on or about <u>April 1, 1976</u>. Each of the individual Condominium owners were advised by letter dated <u>September 12, 1976</u>, from Big Sky Realty that the engineers, Morrison-Maierle, Inc., had discovered a "structural deficiency" in the units and that the owners were cautioned with respect to occupancy until the problem was solved. Again, on September 22, 1976, Big Sky Realty by letter to Plaintiff Association notified the owners of the deficiency.

> 4. The Court finds that from April 1, 1976, through September 22, 1976, the owners were repeatedly notified of the structural defects and the notices were sufficient to put them on notice that they had been injured.

On January 30, 1987, the District Court entered final judgment for Lloyd W. Darg and Associates, provided therein that the judgment was final, and certified it for appeal pursuant to Rule 54(b), M.R.Civ.P. In like manner, on May 15, 1987, the District Court entered final

9

judgment in favor of Moe, and directed also that there be a final judgment and certified it for appeal pursuant to Rule 54(b).

Both the Moe and the Darg cases were appealed, but eventually they were dismissed. The judgments in those cases have therefore become final.

A principal argument of the unit owners in this Fire case, to avoid the statute of limitations, is that they never learned of the defects of the fireplaces until after the fires occurred in 1981. It is clear, however, that in the Structure case, the District Court determined that the defendants have been fully notified of the defective conditions of the construction of the condominiums, and that the notice of defects included all of the structural defects in the condominiums.

e.  Subrogation Claims

In granting summary judgment in this case, the District Court noted that on oral argument on the motions, counsel for plaintiffs indicated that these claims were actually subrogated claims brought by the insurers involved. However, there is no amendment to the pleadings nor any other indication of the pleadings that persons other than the unit owners were the real parties in interest. That the claims the plaintiffs made may in fact be subrogation claims makes no difference, however. A subrogee stands in the shoes of the subrogor and is subject to the same defenses as though the action were sued upon by the insured. Beedie v. Shelley (1980), 187 Mont. 556, 610 P.2d 713, 716.

f.  Beginning Date of Statute of Limitations

The unit owners contend that the beginning date of any applicable statute of limitations in this case occurred after the fires in the units in 1981. They contend that after the repair effort in 1976, they were never advised that the fireplaces had not been repaired or that they were still defective. On this contention, the unit owners based their various theories of liability, including express warranty, implied warranty, strict liability, negligence, fraud and deceptive practices.

In entering its order granting summary judgment to the defendants in this, the Fire case, the District Court recited facts established in the Fire case and the Structure case which the District Court denominated "findings of fact." Usually there are no findings of fact in an order granting summary judgment. In this

10

case, however, the portion of the order denominated "findings of fact" is really a statement of the undisputed facts as they then appeared before the District Court and from which the court concluded there was no issue of material fact, and upon which the court based its order of summary judgment.

Important to the findings were the statements relating to the fireplace deficiencies. The court stated that the 1976 repairs included work on the fireplaces; the same unit owners who were plaintiffs in the Fire case were also plaintiffs in the Structure case; and that in the Structure case, it had been alleged that the plaintiffs had been damaged by defective original fireplace installations in 1973-1975, and by defective fireplace repairs in 1976. The court determined that each of the legal theories alleged in the Fire case considering the defective fireplaces was also alleged as a theory of recovery against the defendants in the Structure case. On that basis, the court had determined in the Moe and Darg cases that during the period from April 1, 1976 through September 28, 1976, the owners of the condominiums and the plaintiffs were repeatedly notified of and became aware of the deficiencies in the condominiums and that such notices and acknowledgements were sufficient to put them on notice that they had been damaged and injured.

Therefore, in view of the findings derived from the Structure case, and the fact that the summary judgment in both cases had become final judgments, there could be no dispute as a material fact of the beginning date of notice to the unit owners of the defects of the fireplace deficiencies.

## DEFENDANTS BRUCE HOUSTON AND THE STATE OF MONTANA

The unit owners claim that the District Court improperly granted summary judgment in favor of Bruce Houston and the State of Montana.

Houston and the State of Montana were not parties in the Structure case. The unit owners contend that Houston, as an employee of the State of Montana, committed acts of negligence in 1981 and following, in that he did not inform or warn the unit owners that he had discovered the deficiencies in the fireplaces

11

that had led to the two earlier fires in 1981. The State of Montana is added as a defendant in this case because it was the employer of Houston, who was an assistant state fire inspector.

The unit owners point out that after the repairs were made in 1976, they were informed by an official of Realty that the units were "safe and sound" and that Houston's negligence in failing to find the defects which existed constitutes a separate cause of action against Houston and the State of Montana based on different facts from the action pending against the other defendants.

In granting summary judgment, the District Court took judicial notice of the Structure case and the summary judgments granted to Darg and Moe. The District Court determined in effect that collateral estoppel arose from the judgments in both cases in that in 1976, the plaintiffs knew or should have known that the Deer Lodge Condominium in general and the fireplaces therein in particular were defective, and that such notice was sufficient to put the unit owners on notice of their injury and damage. The court further determined that the only possible claims that the unit owners might have against Houston and the State of Montana were founded upon negligence in the alleged failure to discover and warn the plaintiffs of the fireplace defects.

The unit owners contend that the summary judgment against them was improper on the basis that collateral estoppel does not apply, because there was no identity of the parties and identity of issues in the two cases. They also contend that collateral estoppel does not apply because the summary judgments were not final judgments

in the Structure case.

The unit owners rely on a sentence in State ex rel. First Bank System v. District Court (1989), ___ Mont. ____, 782 P.2d 1260, 1262, 46 St.Rep. 1956, in which this Court said: ". . . We do emphasize that summary judgment is not a decision on the merits." That sentence, however, is taken out of context. The very next sentence in the case goes on to say that a denial of summary judgment is simply a decision that there are factual issues. We are not dealing in this case with a denial of summary judgment, but rather a grant of summary judgments to Darg and to Moe. There can be no doubt that a grant of summary judgment is a decision on the merits of the case. Granger v. Time, Inc. (1977), 174 Mont. 43, 568 P.2d 535, 538.

In Marriage of Stout (1985), 216 Mont. 342, 701 P.2d 729, we determined that collateral estoppel had three elements: (1) identical issues decided in the prior adjudication; (2) a final judgment on the merits; and, (3) the party against whom collateral estoppel is asserted was a party or privy to a party in the prior adjudication.

Identical issues were litigated, and final judgments on the merits were entered in these cases.

The District Court found in the Structure case that the unit owners knew or should have known of the various defects in the condominiums in 1976 and prior thereto. On the whole record before us, we determine too, because of the final judgments, that as a matter of law the unit owners knew or should have known of the

defects, including the defective fireplaces. The cause of action asserted by the unit owners against the State and Houston is based upon negligence in failing to discover or to warn of the deficiencies in the fireplaces. Houston, and his employer, the State, may not be held liable on the basis of a failure to warn when at the same time the unit owners knew or should have known of those same defects.

Since the beginning date of the running of the statute of limitations against the unit owners was in 1976 or earlier, the period of limitations for actions based on negligence was three years, § 27-2-204, MCA. Thus, in 1981, any claim of the unit owners based on negligence for the defective fireplaces was already dead from the passage of time. A new cause of action based on the same facts which barred the former action does not, like the phoenix, rise from the burned ashes of the old cause of action youthfully alive to live another period.

The unit owners also lose on their argument that there is no identity of parties in the Structure case and the Fire case which, if true, would preclude collateral estoppel. The unit owners, suing as a class in the Structure case, and the unit owners here in the Fire case were parties in both actions, and are the parties against whom collateral estoppel is asserted. This establishes one leg of the tripod test for collateral estoppel adopted by us in Aetna Life and Casualty Insurance Company v. Johnson (1984), 207 Mont. 409, 673 P.2d 1277 and in Marriage of Stout (1985), 216 Mont. 342, 701 P.2d 729. The other legs, adjudication of identical

14

issues, and a final judgment on the merits, are also proved.

We therefore affirm the summary judgments in favor of Bruce Houston and the State of Montana.

BIG SKY OF MONTANA, INC.; BIG SKY OF MONTANA REALTY, INC.

On January 17, 1989, the District Court entered its findings of facts, conclusions and order granting summary judgment to Realty. As noted in the foregoing, Realty was a successor in interest of Big Sky of Montana, Inc.

In its order, the court discussed the several theories of claims brought by the unit owners. We will examine each claim or point of decision by the District Court to determine if we find therein an issue of material fact which would preclude summary judgment. Rule 56, M.R.Civ.P.

1. Collateral Estoppel

Essentially, the District Court concluded that the unit owners were collaterally estopped from disputing, and were bound by the facts and conclusions determined by the Moe and Darg final judgments in the Structure case. As we have discussed earlier, the District Court drew from those judgments the conclusion that in 1976 the unit owners knew or should have known the fireplaces within the Deer Lodge Condominiums were defective and that such knowledge was sufficient to put plaintiffs on notice of their property damage.

In the discussion foregoing relating to the claim against the State of Montana, we set out the legal essentials to establish collateral estoppel. Those legal essentials are met here. There

15

can be no doubt in this case that the claims for fireplace damages were included in the Structure case, and settled in the same. In paragraph V of the amended complaint in the Structure case, we find the following:

> That said engineer and architect also discovered on or about August 1, 1984, that the fireplaces and the flues of said fireplaces in the Deer Lodge Condominium buildings were not installed in accordance with the Uniform Fire Code and did not have the required clearance from combustible material to make them safe for operation and that in some cases combustible insulation had been installed next to the fireplaces. That the foregoing enumeration of defects is representative of the defects but not inclusive of all the defects presently known or which may be hereafter discovered.

Except for the date of discovery, which affects the application of the statute of limitations, and not collateral estoppel, the elements of the unit owners' claims relating to the fireplaces rising in the Fire case are fully included in the pleadings of the Structure case. There can be no dispute about the identity of issues.

As we said earlier, the other two legs of the collateral estoppel tripod, a final judgment and identity of parties, are also present.

The late-revealed possibility that the Fire case is in reality a subrogation case brought by the insurers does not affect the applicability of collateral estoppel against their insureds as unit owners.

2.  Breach of Express or Implied Warranties

The District Court determined that Realty was entitled to summary judgment in its favor because there were no facts showing

16

the existence of any written contract or express warranty between the unit owners and Realty, and if the written protective covenants established an express or implied warranty the claim was nevertheless barred by any applicable statutes of limitation, §§ 27-2-207(1), -202(3), -204(1) and 27-2-207(2), MCA. In like manner, the District Court determined that any implied warranty was likewise barred by arguably applicable statutes of limitation, §§ 27-2-207(1), and 27-2-204(1), MCA.

None of the unit owners purchased a condominium unit from Realty. Nonetheless, the unit owners present an interesting theory of express warranty. They point out that no specific language is required to constitute an express warranty, citing Scovil v. Chilcoat (Okla. 1967), 424 P.2d 87, 91. They contend that Big Sky of Montana, Inc. warranted that the Deer Lodge Condominiums would be built in accordance with the National Fire Code; and that Realty later warranted in 1977 that the units would be repaired in accordance with the National Fire Code. They then contend that Realty "had advised the owners that the units had been brought up to code."

The unit owners base their claim against Big Sky of Montana, Inc. for express warranty upon the deposition of Bill Martel, the repair contractor in 1977. He testified that in his contract for repair, the reconstruction was to be done according to applicable codes. The unit owners also base claims against Realty upon the repair contract entered into by Realty with Martel Construction Company, and Morrison-Maierle, Inc., party of the third part. In

17

that contract, the scope of the work was to correct defects, to meet reasonable structural standards, and to meet all applicable building codes.

The unit owners also rely on the protective covenants recorded by Big Sky of Montana, Inc. related to the Deer Lodge Condominiums which require that all construction on the premises comply with the provisions of the Uniform Building Code, the National Plumbing Code, and the National Electrical Code. They also rely on the preliminary declaration for Deer Lodge Condominiums, recorded in Madison County, which included the paragraph that the condominiums were subject to the protective covenants already recorded. The unit owners further maintain that the provisions of the condominium documents run with the land because state law requires that they be recorded in order to establish the condominium. Section 70-23-305(1), MCA.

The unit owners base their claim of implied warranty of habitability upon Chandler v. Madison (1982), 197 Mont. 234, 642 P.2d 1028; and also upon Degnan v. Executive Homes, Inc. (1985), 215 Mont. 162, 696 P.2d 431, which holds that an implied warranty of habitability is a legal duty placed on the builder/vendor of a house, that a breach of such legal duty is a tort, and that torts do not require privity of contract.

The unit owners further point to our decisions which have held that subdivision plats, which reserve roadways or which show a park or like open area, create an implied common law covenant between developers and subsequent purchasers that the seller will open and

18

construct roadways or that the areas will be used in the manner designated. Majers v. the Shining Mountains (1986), 219 Mont. 366, 711 P.2d 1375; Benson v. Pyfer (Mont. 1989), 783 P.2d 923, 46 St.Rep. 2033.

Realty answers these contentions by arguing that the unit owners purchased their units from Big Sky of Montana, Inc., and not from Realty and that there are no contract declarations or other documents between Realty and the unit owners upon which a warranty may be based. Realty further answers that if a breach of implied warranty of habitability could be found in the contract for repair in 1977, a breach of that implied warranty would be a tort (Degnan, supra) barred by the statute of limitations. Sections 27-2-204 and 27-2-207, MCA.

We will discuss the applicability of the statutes of limitations under the next caption, since the statutes are applicable to other issues raised by the unit owners. It is enough to say here that we find no express or implied warranties in the documents described which expose Realty to liability to the unit owners. On this issue we uphold the District Court.

3. Statutes of Limitation

In its grant of summary judgment, the District Court determined that many of the claims of the unit owners were barred because various statutes of limitation had run on the theories of express warranty, implied warranty, strict liability, negligence, fraud, and deceptive practices.

In disputing the applicability of the statutes of limitation,

19

the unit owners contend that they were never made aware of the deficiencies in the fireplaces prior to 1976, and were never advised after the repair effort of 1976 that the fireplaces were still defective. They contend the actual condition of the fireplaces was not discovered until the fires of 1981. They therefore maintain that the statutes of limitation on all theories did not start to run until the time of discovery. Since the Fire case was filed in January 18, 1983, the unit owners contend they meet all applicable statutes of limitation based on the time of discovery.

Subject to certain exceptions not pertinent here, the Montana statutes of limitation provide that an action for the relief of fraud or mistake must be commenced within two years (§ 27-2-203, MCA); for a general tort, three years (§ 27-2-204, MCA); for an injury to real or personal property, two years (§ 27-2-207, MCA); and for damages arising out of construction of an approved real property, ten years (§ 27-2-208, MCA), which latter statute will require explanation.

The argument about late discovery is unavailable to the unit owners in this case. They are foreclosed from such argument by the final judgments entered in the Darq and Moe cases which determined knowledge of the defects on the part of the unit owners in 1976. Obviously, the unit owners may not rely on any cause of action for which the statute of limitations is two or three years.

The unit owners, however, point to § 27-2-208, MCA, contending that it provides a limitation period of ten years. That contention

20

needs examination.  The statute provides:

> 27-2-208.  **Actions for damages arising out of work on improvements to real property**.  (1) Except as provided in subsection (2) and (3), no action to recover damages (other than an action upon any contract, obligation, or liability founded upon an instrument in writing) resulting from or arising out of the design, planning, supervision, inspection, construction, or observation of construction of or land surveying done in connection with any improvement to real property shall be commenced more than 10 years after completion of such improvement.
> . . .
>
> (5)   Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

Taken by its four corners, § 27-2-208, MCA, is not in itself a statute of limitation.  Under subsection (5) of the statute, the ten-year period does not extend any other period prescribed by the laws of this state for bringing any action.  What § 27-2-208, MCA, provides is that any other applicable statutes of limitation still remains applicable but in no event shall any cause be commenced more than ten years after the completion of the improvement. Section 27-2-208, MCA, is not in essence a statute of limitations, but rather a statute of repose which prevents any cause of action relating to an improvement to real property from arising after a ten year period.   Thus, if late discovery of the facts were applicable in this case to extend the time for commencement of the action, or, if the circumstances which extend the periods of limitations set out in §§ 27-2-401, and -409, MCA, were involved, the specific applicable limitations periods would be extended, but in no event longer than ten years after the completion of the improvement.  We determine that § 27-2-208, MCA, does not apply in

21

this case to extend the applicable statutes of limitation.

We therefore hold that the District Court correctly interpreted the statutes of limitation in granting summary judgment in this case.

## 4. Other Theories of Recovery

The unit owners claimed that Realty was liable on the ground of negligence. The District Court held that the negligence claim was barred by the applicable statutes of limitation, § 27-2-207(1) and 27-2-204(1), MCA. From what we have said foregoing, we uphold the District Court.

With respect to the unit owners claim based on a count of fraud, the District Court held that the records showed no facts substantiating the knowledge of Realty of the defectively installed fireplaces in 1975, that the plaintiffs were collaterally estopped to deny that the unit owners knew or should have known of the defectively installed fireplaces in 1976 and again that their claims were barred by the applicable statutes of limitation, §§ 27-2-203 and 27-2-207(1), MCA.

The argument of the unit owners with regard to whether Realty had knowledge of the defectively installed fireplaces states that while it is true that Realty did not come into existence until 1976, its stockholders were the same as the stockholders of Big Sky of Montana, and many of those employees carried over to Realty. Although Big Sky of Montana knew of the defects in the buildings, based on a letter from an insurance inspector, Realty undertook the 1976 repairs. The unit owners contend that Realty knew or should

have discovered the defects when it became responsible for the repairs of 1976. That argument may be accepted and still the other grounds relied upon by the District Court--collateral estoppel and limitations--would serve to bar the claims for fraud. Again we hold that the District Court was correct.

The unit owners also based a claim against Realty on the grounds of deceptive practices. Here, the District Court determined that the evidence did not substantiate that the plaintiffs purchased their homes "primarily for personal, family or household purposes" and that in any event, the claim is barred by limitations, § 27-2-211, MCA.

The Montana Consumer Protection Act provides in § 30-14-133, MCA, that a person who purchases goods or services primarily for personal, family or household purposes and suffers a loss of money or property may bring an action (but not a class action) to recover actual damages, which may be trebled. The Act also provides for the recovery of reasonable attorney fees.

The Act does not define the term "goods" and no issue is presented in this case as to whether the term "goods" includes a condominium unit. We are, therefore, not presented with that issue.

The unit owners contend that the finding of the District Court that the facts did not establish the use of the condominiums was for "personal, family or household purposes" is contra to the declarations filed for Deer Lodge Condominiums which stated that they should be for residential purposes only. Moreover, the unit

23

owners contend that in any event, whether the use of the residences comes within the Act creates a material issue of fact.

Realty answers that the unit owners use their units for personal use only a few days of the year and allow the remainder of the year to be rented out to other persons and that the units were more investment than they were purchases of homes.

Whatever the merits of these arguments, the limitations of actions still apply and the claim in any event is barred. Again we uphold the District Court.

5. <u>Release</u>

The District Court also concluded that the claims against Realty were barred by a fully-performed release executed by the Association on behalf of the plaintiffs.

The unit owners contend that the release was not signed by the entire board of directors, that it was not binding, that it released only claims arising prior to the date of the document, was related only to the repairs performed on the roof of the condominiums and did not include undisclosed defects in the buildings and fireplaces.

Respondents answer by pointing to the provisions of the release:

> . . . Certain alleged deficiencies in the construction of the Deer Lodge condominium units including discrepancies between improvements constructed and the original and amended construction plans, uncompleted punch list, defective materials and construction, and the like;

> . . . Any claims they may have against BMSR [Realty], its employees, directors, shareholders, affiliates or

24

subsidiaries, and against Big Sky of Montana, Inc., its employees, shareholders, directors, affiliates or subsidiaries, arising out of the construction and sale of the condominium units known as the Deer Lodge Condominiums, such waiver and release to apply to all claims arising prior to and including the date of this Settlement Agreement.

In addition to the unit owners having released and waived any and all claims relating to the condominiums, Realty argues that the consideration of $76,259.46 in total cannot be disregarded.

The release in its terms is, of course, broad enough to include all of the defects in the condominiums at the time the release was signed. The unit owners avoid the all-inclusive language by contending that the release was obtained by fraud, in that Big Sky and Realty failed to disclose to the unit owners the defective nature of the buildings and the fireplaces, and further that the release itself was unconscionable.

If the release had been obtained by fraud, the release would be unenforceable under § 28-3-304, MCA. As we have discussed foregoing, however, any claim of fraud is unavailable to the unit owners for two reasons: there are no facts in the record substantiating a claim of fraud, and in any event, the statute of limitations would apply.

As for the argued unconscionability, the circumstances here prevent us from considering that claim. It would be the height of judicial frivolity to state on the one hand that the claims of the unit owners in the Fire case were collaterally estopped by the settlement of the Structure case, and then to reopen the Fire case on the basis that a release executed four years before the fires

was unconscionable. The settlement of the unit owners claims in the Structure case included the complete razing of the condominium buildings. Surely the Fire claim did not survive the razing, release or no release.

6. Indemnity

In granting summary judgment for Realty, the District Court concluded that the 1976 agreement to indemnify Boyne against liability against claims arising out of Big Sky's business affairs prior to the 1976 stock sale was not a contract for the benefit of the unit owners, nor did it create any rights for the unit owners justifying their claims against Realty.

The unit owners contend in this case that they are entitled to indemnity from Realty on three theories: as third party beneficiaries, on grounds of quasi-contract, and that privity of contract is not necessary to establish indemnity.

There are indications in the record that when Big Sky of Montana was sold to Boyne and Realty was formed at the same time, that Realty agreed that it would be responsible for and indemnify both Big Sky and Boyne with respect to any pre-existing obligations. The actual agreement of indemnity is not in the record.

The record does show that Boyne contributed $400,000 to the settlement of the Structure case. Based on that, the unit owners make the following argument:

> Since the District Court chose to take judicial notice in the Structure case, part of the record in this case is the settlement payment made by the Defendants in the

26

> Structure case to the Plaintiffs therein.
> That settlement was for the approximate sum of
> 3.5 million dollars. Clearly, if that case
> was settled by payment of any funds by B.S.M.,
> [Realty], Boyne, or any of the stockholders of
> those companies, then it raises a factual
> issue with respect to the application of
> indemnity agreements in these cases. Since a
> payment was made in the Structure case large
> enough to settle the same, there is a genuine
> issue of material fact as to the obligation
> which certain of the Respondents therein may
> have to the [unit owners] with respect to
> indemnification.

Taking the unit owners' claim for indemnification at face value, in the apparent agreement Realty is the indemnitor, and Big Sky of Montana and Boyne are the indemnitees. Boyne contributed to the settlement in the Structure case; Realty did not. We have no record here that an indemnitor made any payment on behalf of an indemnitee. There is no record of a payment by an indemnitor which would trigger any obligation to third parties.

It is unnecessary to discuss the three theories of indemnity posed by the unit owners. The District Court was correct in finding no basis for indemnity when it awarded summary judgment in favor of Realty.

SUMMARY JUDGMENTS IN FAVOR OF GENERAL ELECTRIC AND MONTANA POWER COMPANY

On March 1, 1989, the District Court adopted the undisputed findings and conclusions of law made in the Realty case on January 17, 1989, and, on the conclusion that their corporate veils could not be pierced in this case, rendered summary judgment in favor of General Electric Pension Trust, and the Montana Power Company. It also rendered summary judgment in favor of Boyne, U.S.A. which we

27

will discuss separately.

The unit owners pose a derivative theory to upset the summary judgments in favor of G.E. and MPC. They claim that the Chrysler Realty Corporation, as a stockholder of Big Sky of Montana and Realty, used the corporations as an alter ego, and thereby, the corporate veil is pierced as to all other stockholders. The unit owners rely on Drilcon, Inc. v. Roil Energy Corporation, Inc. (1988), 230 Mont. 166, 749 P.2d 1058 and Hando v. PPG Industries, Inc. (1989), 236 Mont. 493, 771 P.2d 956.

Under Drilcon, supra, the corporate veil can be pierced if a stockholder of the corporation uses the corporation as an alter ego, or as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud. 749 P.2d at 1063. The unit owners utilize Hando, supra, to argue that a subsidiary is the alter ego of the parent corporation if the corporate affairs of both are so intertwined that in effect each corporation has no separate identity. 771 P.2d at 960.

We have nothing in this record to indicate anything but that G.E. and MPC were passive stockholders of Big Sky of Montana and of Realty. The affidavits before the District Court, which the District Court considered in granting summary judgment, were uncontradicted that these corporate stockholders had no more than a passive interest in the corporations, and took no action as stockholders which would indicate their use of the corporations either as an alter ego or for purposes of subterfuge. There simply can be no argument that each of the corporations is entitled to

28

summary judgment and that as to them the corporate veil has not been pierced.

## SUMMARY JUDGMENT IN FAVOR OF BOYNE U.S.A., INC.

The District Court's order of March 1, 1989 also granted summary judgment in favor of Boyne U.S.A., Inc.

In their appellate brief, the unit owners argue since Boyne absorbed Big Sky of Montana, Boyne became liable for its obligations which arose thereafter, under § 35-1-806(2)(e), MCA.

The District Court noted that Boyne took no part in the repairs or reconstruction of the condominiums in 1976 and 1977, nor made any representations regarding such repairs. It further awarded summary judgment in favor of Boyne on the grounds of the applicable statutes of limitation, the release, collateral estoppel, laches, and a splitting of causes of action.

Most of the grounds utilized by the District Court granting summary judgment have been discussed by us fully in the foregoing material. Without belaboring this Opinion further, we hold that the summary judgment in favor of Boyne was proper.

## DENIAL OF CONSOLIDATION

On May 28, 1985, the unit owners in the Fire case made a motion to consolidate with the Structure case. The District Court denied the motion on July 8, 1985. On February 26, 1987, the District Court stayed any further proceedings in the Fire case. The stay was effective until June 6, 1988. Thereafter the District Court ruled that the unit owners were barred from any further action in the Fire case because of collateral estoppel arising out

29

of the Structure case.

The unit owners contend that the motion for consolidation should have been granted because if it had, the situation of collateral estoppel would not have arisen and the unit owners would have had their day in court with respect to the Fire case.

Since 1929, it has been a rule in Montana that the subject of consolidation of cases is within the discretion of the district court, which will not be interfered with unless clearly abused. St. George v. Boucher (1929), 84 Mont. 158, 162, 274 P. 489.

Although there appeared to be common issues of law and fact in the two cases (Keller v. Llewellyn (1977), 175 Mont. 164, 573 P.2d 166), there are other factors which influenced the District Court not to consolidate.

The Fire case was initiated by the unit owners in 1983, through their counsel Michael C. Coil. In 1984, the unit owners, in a class action with other Deer Lodge Condominium owners, began the Structure case, again represented by Mr. Coil. In January, 1986, the plaintiffs in the Structure case discharged Mr. Coil. He was replaced by Page Wellcome as counsel for the unit owners in the Structure case.

The District Court was then presented with a situation where the unit owners may have been the same but there were different defendants involved. The reason there were different defendants was that in the Fire case, the shareholder defendants, Chrysler Realty Company, Burlington Northern, Continental Oil Company, Montana Power Company, Northwest Airlines Incorporated, and General

Electric Pension Trust had been dismissed from the case for various reasons. Yet some or all of these were defendants in the Structure case. The Structure case would require piercing-the-corporate-veil issues, but these would not appear in the Fire case. After Mr. Wellcome came into the case, the plaintiffs in two different cases were presenting different issues of discovery. These factors apparently moved the District Court to deny the motion to consolidate, and to stay proceedings of the Fire case.

Under the circumstances, we find no abuse of discretion in the denial by the District Court of the motion to consolidate the two cases.

PLAINTIFFS WHO WERE NOT IN STRUCTURE CASE

Four of the plaintiffs in the Fire case were not plaintiffs in the Structure case. They were Mel's Remodeling, Robert Tousignant, Gerald Tereich and Carolyn Tereich. Their claims may have been subrogated to their insurers.

These four plaintiffs were not parties in this Structure case so the rule of collateral estoppel is not available as to them. Nonetheless, it is clear that their claims are barred by the statute of limitations based on any alleged negligence of the defendants (Montana Power Company and General Electric Pension Trust, of course, are not liable to these plaintiffs on any ground). In reaching this decision, we take judicial notice of the facts established in the Structure case which show that the unit owners knew, or should have known, of the fireplace defects, and were repeatedly notified of the structural defects from April 1,

31

1976 to September 28, 1976. We determine as a matter of law in this case that there is no genuine issue of material fact as to these plaintiffs and their knowledge before September 28, 1976, was sufficient to put them on notice.

> The law does not contemplate such discovery as would give complete knowledge before the cause of action accrues. Mobley v. Hall (1983), 202 Mont. 227, 657 P.2d 604. Rather, the discovery doctrine only tolls the running of the statutory clock until such time as the plaintiff, in the exercise of reasonable care and diligence, should have been aware of the wrongful act and injury.

E.W. v. D.C.H. (1988), 231 Mont. 481, 754 P.2d 816, 820.

The claims of these plaintiffs based on negligence are time-barred, and no other ground of liability appears under any theory. We uphold the summary judgment against these plaintiffs.

CONCLUSION

For the reasons foregoing, we hold that the summary judgments granted by the District Court in this cause as to each and all defendants be, and is hereby AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

32

R. C. McDonough
Justices

33

ASSOCIATION OF UNIT OWNERS OF the DEER LODGE CONDOMINIUM; Larry Burnside; Mary Burnside; Mel's Remodeling, Inc.; Robert Tousignant; Gerald Tereich; Carolyn Tereich; Bruce J. Hedbloom; Emil Eschenburg; Dolly Eschenburg; Raymond D. Ryan; Ernest M. Shewchuk; Murray B. Stevens; W. Keith Stinson; Sally Stinson; James Vanderbiesen; Norman Weckerly; Tomkins, Ulrich & Roll; Adrian Bom; William Brunsdale; Robert Garrity; Frank Lieber; Donald K. Miller; William Wood; Donna Wood; and Richard Winchell, Plaintiffs and Appellants,

v.

BIG SKY OF MONTANA, INC.; Big Sky of Montana Realty, Inc.; Boyne USA, Inc.; Thomas & Co. (General Electric Pension Trust); The Montana Power Company; the State of Montana, Defendants and Respondents.

No. 89–407.

Supreme Court of Montana.

Submitted June 12, 1990.

Decided Sept. 24, 1990.

Rehearing Denied Oct. 25, 1990.

Owners of condominium units brought action against developer and others to recover for damages due to fire. The Fifth Judicial District Court, County of Madison, Frank Davis, J., granted summary judgment for defendants, and owners appealed. The Supreme Court, Sheehy, J., held that: (1) judgment in related action to recover for structural damage established when owners knew or should have known of fireplace deficiencies; (2) claims were time barred; and (3) settlement of related case involving claims for structural damage, which resulted in the razing of the units, precluded recovery for fire damage.

Affirmed.

**1. Judgment ⟨⟩190**

Grant of summary judgment is a decision on the merits of the case.

**2. Health and Environment ⟨⟩18**

Final judgment in action arising out of alleged structural defects in condominium units established that owners knew or should have known of various defects, including deficiencies in fireplaces, so that fire inspector and state could not be held liable for failure to warn owners of defects of which they should have known, with respect to claim for damage caused by fire.

**3. Limitation of Actions ⟨⟩95(7)**

Negligence cause of action against fire inspector and state based on alleged failure to discover or warn owners of deficiencies in fireplaces in condominium units was time barred when brought more than two years after condominium owners knew or should have known of deficiencies.

**4. Judgment ⟨⟩677**

For collateral estoppel purposes, owners of condominium units who sued as class in action based on structural defects were the same parties as the individual unit owners who sued for damage caused by fire.

**5. Judgment ⟨⟩715(2)**

Judgments obtained in action brought by condominium unit owners alleging structural defects in condominiums collaterally estopped them from maintaining another action based on alleged damage due to fire where claims for fireplace deficiencies were included in the claims for damages in the case based on structural defects.

**6. Contracts ⟨⟩205.10, 205.35(3)**

Fact that developer of condominiums warranted that condominiums would be built in accordance with National Fire Code and that corporation formed to manage and liquidate the property had entered into a repair contract which required that reasonable structural standards on all applicable building codes be met did not give rise to express or implied warranties on the part of the manager to unit owners.

not appear in the Fire case. After Mr. Wellcome came into the case, the plaintiffs in two different cases were presenting different issues of discovery. These factors apparently moved the District Court to deny the motion to consolidate, and to stay proceedings of the Fire case.

Under the circumstances, we find no abuse of discretion in the denial by the District Court of the motion to consolidate the two cases.

## PLAINTIFFS WHO WERE NOT IN STRUCTURE CASE

Four of the plaintiffs in the Fire case were not plaintiffs in the Structure case. They were Mel's Remodeling, Robert Tousignant, Gerald Tereich and Carolyn Tereich. Their claims may have been subrogated to their insurers.

[13] These four plaintiffs were not parties in this Structure case so the rule of collateral estoppel is not available as to them. Nonetheless, it is clear that their claims are barred by the statute of limitations based on any alleged negligence of the defendants (Montana Power Company and General Electric Pension Trust, of course, are not liable to these plaintiffs on any ground). In reaching this decision, we take judicial notice of the facts established in the Structure case which show that the unit owners knew, or should have known, of the fireplace defects, and were repeatedly notified of the structural defects from April 1, 1976 to September 28, 1976. We determine as a matter of law in this case that there is no genuine issue of material fact as to these plaintiffs and their knowledge before September 28, 1976, was sufficient to put them on notice.

The law does not contemplate such discovery as would give complete knowledge before the cause of action accrues. *Mobley v. Hall* (1983), 202 Mont. 227, 657 P.2d 604. Rather, the discovery doctrine only tolls the running of the statutory clock until such time as the plaintiff, in the exercise of reasonable care and diligence, should have been aware of the wrongful act and injury.

*E.W. v. D.C.H.* (1988), 231 Mont. 481, 754 P.2d 817, 820.

The claims of these plaintiffs based on negligence are time-barred, and no ground of liability appears under any theory. We uphold the summary judgment against these plaintiffs.

## CONCLUSION

For the reasons foregoing, we hold the summary judgments granted by the District Court in this cause as to each and all defendants be, and is hereby AFFIRMED.

TURNAGE, C.J., and HARRISON, BARZ, WEBER, HUNT and McDONOUGH, JJ., concur.



STATE of Montana, Plaintiff and Respondent,

v.

Samuel E. MEDINA, Defendant and Appellant.

No. 90–047.

Supreme Court of Montana.

Submitted May 30, 1990.

Decided Sept. 25, 1990.

Defendant was convicted of sexual assault by the Second Judicial District Court, Silver Bow County, Mark P. Sullivan, J., and he appealed. The Supreme Court, Hunt, J., held that: (1) evidence of defendant's prior conviction for sexual assault upon same victim was admissible, for purpose of proving motive, intent, absence of mistake or accident, and knowledge; (2) evidence of victim's prior consistent statements was admissible as part of State's case-in-chief; and (3) sexual assault conviction was sufficiently supported by testimony of victim.

Affirmed.