[No. A085342. First Dist., Div. Four. Aug. 24, 2000.]

TIM GIEST, Individually and as Executor, etc., et al., Plaintiffs and Appellants, v.
SEQUOIA VENTURES, INC., Defendant and Respondent.

TIM GIEST, as Executor, etc., Plaintiff, v.
ABEX CORPORATION et al., Defendants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II. B.

**COUNSEL**

Law Offices of Christopher E. Grell, Christopher E. Grell and Richard F. Rescho for Plaintiffs and Appellants.

Thelan Reid & Priest, Philip P. Placier and James J. Ostertag for Defendant and Respondent.

**OPINION**

**REARDON, J.**—This appeal from a judgment of nonsuit challenges the trial court's conclusion that the asbestos wrongful death action was barred by the Montana statute of repose, as made applicable by our own "borrowing statute." This ruling was sound, as was the court's award of costs. Accordingly, we affirm the judgment.

### I. BACKGROUND

Appellants, the surviving heirs and the executor of the estate of Leon Giest, filed this action against numerous defendants on December 5, 1995.[1] It arises out of the death of their decedent Leon Giest on June 5, 1995, from diseases resulting from the alleged exposure to asbestos and asbestos-containing products during his working years in Montana. Subsequently, this action was consolidated with the personal injury action filed by decedent and his wife on December 29, 1993. (*Giest v. Abex Corp.* (Super. Ct. S.F. City and County, 1993, No. 957515.)

Respondent Sequoia Ventures, Inc. (Sequoia) moved for summary judgment on grounds the action was time-barred under Montana law. After losing this round, Sequoia lodged a trial brief on the Montana statute of repose, arguing the company's prospective entitlement to nonsuit or directed verdict.

Counsel stipulated that the nonsuit motion could be heard on the following offer of proof: Leon Giest worked for the Montana Power Company (MPC) in Billings, Montana from approximately 1950 to 1985. Bechtel Corporation, the predecessor to Sequoia, constructed an addition to the plant during the period 1964 to 1968. The addition was completed in 1968. During construction and thereafter, Giest was exposed to asbestos-containing materials used

---

[1]Betty Giest, decedent's wife, was lead plaintiff in the wrongful death action. She died prior to trial. Plaintiffs and appellants Tim Giest, Steve Giest, Keith Giest and Ken Giest are the surviving heirs of Leon Giest; Tim Giest also sues in his capacity as executor of the estate of Leon Giest.

by Sequoia in constructing the addition. Exposure to these materials ultimately led to lung cancer which caused his death.

The court granted the motion and entered judgment on nonsuit, ruling that the action was "barred by the limitations period set forth in Montana Code section 27-2-208 made applicable to this action under California Code [of Civil Procedure] section 361." This appeal followed.[2]

## II. Discussion

### A. *The Wrongful Death Action Is Time-barred*

 Many states have adopted "borrowing statutes" in order to prevent forum shopping by plaintiffs. These statutes adopt the statute of limitations of the state in which the action arose. (*Delfosse v. C.A.C.I., Inc.-Federal* (1990) 218 Cal.App.3d 683, 691 [267 Cal.Rptr. 224]; Rest.2d Conflict of Laws, § 142, com. f, p. 397.) Our borrowing statute states: "When a cause of action has arisen in another state, . . . and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, except in favor of one who has been a citizen of this state, and who has held the cause of action from the time it accrued." (Code Civ. Proc.,[3] § 361.)

Appellants contend that section 361 *only* applies in cases where plaintiffs have sued in a particular state for the sole purpose of avoiding a limitation period which has lapsed in another state. They claim this reasoning does not apply to them because they brought the action in California to obtain complete recovery, and at least seven defendants were not amenable to service in the State of Montana. While the overriding purpose of borrowing statutes is to curtail forum shopping, our section 361 does not inquire into the plaintiff's subjective intentions in suing in California. By its terms section 361 applies *whenever* a cause of action arises in another state and would be stale in that state, unless the holder of the cause of action is a California citizen who has held the cause from the time of accrual.

This being the case, we conclude that our "borrowing statute" required the court to look to Montana law to determine whether this wrongful death

---

[2]Sequoia argues that the validity of the court's decision on the nonsuit motion is not properly before this court because appellants have appealed from the judgment for costs entered on October 15, 1998, not from any judgment on the nonsuit motion. Decision on the nonsuit motion was announced orally from the bench on July 8, 1998, but the actual judgment thereon was filed considerably later—after appellants' opening brief and respondent's brief were lodged. We exercise our discretion to construe the premature appeal from the cost judgment as encompassing both judgments. (See Cal. Rules of Court, rule 2(c).)

[3]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

action is barred in that state. Subject to exceptions not pertinent here, the Montana statute of repose, commonly referred to as the "architects' and builders' statute," provides: "[A]n action to recover damages (other than an action upon any contract, obligation, or liability founded upon an instrument in writing) resulting from or arising out of the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property or resulting from or arising out of land surveying of real property may not be commenced more than 10 years after completion of the improvement or land surveying." (Mont. Code Ann. § 27-2-208.)

In *Reeves v. Ille Electric Company* (1976) 170 Mont. 104 [551 P.2d 647], the Montana Supreme Court upheld the constitutionality of this statute against due process and equal protection challenges. *Reeves* also was a wrongful death action, brought by the administrator of the estate of a deceased college student who was electrocuted while taking a whirlpool bath in a university field house. The administrator sued the whirlpool manufacturer, the electrical company that installed the whirlpool, and the architect who designed the field house. Judgment in favor of the architect and installation contractor was upheld under the architects' and builders' statute, but reversed as to the manufacturer. The court reasoned that the whirlpool manufacturer was a "materialman,"[4] excluded from statutory protection: "Ille took no part in the construction of the field house or in the related phases of the whirlpool installation. It simply manufactured the whirlpool machine and shipped it to Montana State University. Plaintiff alleges negligence in failure to warn of inherent dangers, failure to notify and instruct as to proper installation, and negligence in design of the whirlpool machine . . . . These allegations relate to design and manufacture of the Ille whirlpool machine. Ille was no part of the field house construction team. Ille simply furnished an appliance that was subsequently installed in the field house. As such, Ille was simply a materialman whose product was incorporated in the construction." (*Id.* at p. 653.)

Here, Sequoia, a general contractor, falls within the classification of professions and occupations which the statute seeks to protect, namely those furnishing the "design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property." (Mont. Code Ann. § 27-2-208.) Appellants assert that decedent's injury arose out of Sequoia's construction of an addition to the MPC, which was completed in December 1968. The complaint was filed in 1995, well beyond the 10-year statute of repose.

Nonetheless appellants urge that the statute does not operate in the situation present here, namely exposure to asbestos-containing products

[4]A "materialman" is "[a] person who supplies materials used in constructing or repairing a structure or vehicle." (Black's Law Dict. (7th ed. 1999) p. 991, col. 2.)

occurring within the 10-year period, but the resulting disease not manifesting itself until later. According to this reasoning, the statute of repose could not apply because it would cut off their cause of action before it even accrued.

First, the language of the statute brooks no exception for the latent nature of disease and the attendant delayed accrual of a personal injury or wrongful death cause of action. Second, appellants misunderstand the nature of the statute. As pointed out in *Ass'n of Unit Owners v. Big Sky of Mont.* (1990) 245 Mont. 64 [798 P.2d 1018, 1028]: "Section 27-2-208, MCA, is not in essence a statute of limitations, but rather a statute of repose which prevents any cause of action relating to an improvement to real property from arising after a ten year period. Thus, if late discovery of the facts were applicable in this case to extend the time for commencement of the action . . . the specific applicable limitations periods would be extended, but in no event longer than the ten years after the completion of the improvement." The particular issue in *Big Sky* was whether the architects' and builders' statute *extended* other prescribed statutes of limitation. While that particular issue is not germane to this case, the distinction between a statute of limitations and a statute of repose is.

█ Slicing this distinction a bit finer, while a statute of limitations normally sets the time within which proceedings must be commenced once a cause of action accrues, the statute of repose limits the time within which an action may be brought and is not related to accrual. Indeed, "the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, [the] period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." (54 C.J.S. (1987) Limitations of Actions, § 4, pp. 20-21, fn. omitted.) A statute of repose thus is harsher than a statute of limitations in that it cuts off a right of action after a specified period of time, irrespective of accrual or even notice that a legal right has been invaded. (*Ibid.*)

█ Appellants also assume that the North Dakota case of *Blikre v. Acands, Inc.* (1999) 1999 N.D. 96 [593 N.W.2d 775] assists their cause. Not so. There, the plaintiff workmen brought a personal injury action against asbestos manufacturers for injuries caused by exposure to asbestos products during construction. The North Dakota Supreme Court held that its 10-year statute of repose—similar in certain respects to the Montana statute—did not "bar an action for injury allegedly caused by exposure, during construction, to a defective product, which is brought against a manufacturer or distributor of the product, even though the defendant installed the product as part of an improvement to real estate." (*Id.* at pp. 776-777.)

The court first set out the Legislature's intent in adopting the statute, namely " 'to limit what would otherwise be virtually unlimited and perpetual exposure to liability for persons engaged in the "design, planning, supervision, or observation of construction or construction" of improvements to real property without eliminating liability entirely. . . .' " (*Blikre v. Acands, Inc., supra,* 593 N.W.2d at pp. 777-778.) Next, as with the Montana scheme, the court ruled that the clear language of the statute does not extend protection to materialmen, manufacturers or suppliers of products used in a real property improvement. (*Id.* at p. 777.) As to the defendants' contention that they acted in a dual capacity, both as manufacturer/distributor and installer, and thus came within the statute because of their installation and construction activities, the court pointed out that the language of the North Dakota statute (*unlike* the Montana counterpart) only thwarts actions premised on a *deficiency* in the construction or installation activities. Since the plaintiffs claimed their injuries were caused by exposure to defective products manufactured, sold or distributed by the defendants, rather than by any deficiency in their construction or installation work, the action did not arise out of any activity protected by the statute. (*Id.* at p. 778.)

Here, Sequoia benefits from Montana's statute of repose because it is sued as the general contractor in connection with construction of the MPC addition, not as a manufacturer or supplier of asbestos products. Sequoia stands in exactly the same shoes as the company that installed the defective whirlpool in *Reeves*, a company that was dismissed from suit on summary judgment under authority of the statute of repose.

Further, the North Dakota statute expressly limits the time for bringing actions to recover damages arising from any *deficiency* in the design and construction process. (N.D. Cent. Code § 28-01-44.) On the other hand, the Montana statute more broadly envelopes actions such as this "to recover damages . . . resulting from or arising out of the design, planning, supervision, inspection, construction or observation of construction" for improvements to real property. (Mont. Code Ann. § 27-2-208(1).) Thus, to the extent appellants' action and offer of proof is aimed at Sequoia's *installation activities*, it is barred by this statute. To the extent it is aimed specifically at the asbestos-containing products *used in* the construction process, appellants have not asserted, made an offer of proof, or produced any evidence that Sequoia manufactured the asbestos products or served a materialman role with respect to construction of the power plant addition. Contrary to appellants' assertion, a general contractor's *use* of a product in a construction project does not render the contractor a supplier of the product.

Finally, we point out the obvious: As severe as a statute of repose may seem, it has no bearing on a plaintiff's ability to sue the manufacturer or

supplier of a defective product. It shields those engaged in designing, constructing and supervising improvements to real property, not those engaged in manufacturing, selling and supplying products and building materials used in any such improvement.

B. *The Cost Award Was Proper*\*

. . . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

We affirm the judgment.

Hanlon, P. J., and Poché, J., concurred.

---

\*See footnote, *ante*, page 300.