No. 84-387

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

WALTER C. DEGNAN and CAROL W.
DEGNAN, husband and wife,

                    Plaintiffs and Respondents,

    -vs-

EXECUTIVE HOMES, INC., a Montana
corp., CHARLES E. GAMBLE, MORA
BROS., INC., a Montana corp.,

                    Defendants and Appellants.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Moulton, Bellingham, Longo & Mather; Ward Swanser
                argued for Mora Bros., Billings, Montana
                McGimpsey & Bacheller, (Executive Homes), Billings,
                Montana
                Peterson, Schofield & Leckie, (Gamble), Billings,
                Montana

        For Respondents:

                Anderson, Brown, Gerbase, Cebull & Jones; Richard F.
                Cebull argued for Degnans, Billings, Montana

                            Submitted: January 31, 1985

                            Decided: March 7, 1985

Filed: MAR 7 - 1985

_Ethel M. Harrison_
                    Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the opinion of the Court.

Defendant, Mora Brothers Inc., (Mora Bros.) appeals the March 29, 1984, order of the District Court of the Thirteenth Judicial District, County of Yellowstone, granting Walter and Carol Degnan's (Degnans) motion for summary judgment against Mora Bros. on the issue of breach of the implied warranty of habitability. We affirm the order of the District Court.

Executive Homes, Inc., was established in 1977 by Charles Gamble and Moras. Its purpose was to purchase, develop and sell land for residential construction.

The engineering firm of Christian, Spring, Sielbach & Associates was hired by Executive Homes to design the Oak Subdivision under a rimrock cliff outside of Billings, Montana. Charles Gamble, half-owner and president of Executive Homes and president of ICR Realty, was the chief selling agent of the lots in Oak Subdivision. The Mora brothers, Rene Jr., Robert and Sam own the other half of Executive Homes. Mora Bros. was initially the exclusive builder of homes in Oak Subdivision. Financial realities soon resulted in the use of other builders as well.

In the summer of 1979, Degnans purchased a lot in Oak Subdivision from Executive Homes. Charles Gamble was the selling agent. The sale was contingent upon Degnans agreeing to allow Executive Homes to contract with Mora Bros. for the construction of their home.

The decision to begin construction on the Degnan Home was made on December 12, 1979. Although other contractors had started building homes in Oak Subdivision, pursuant to the agreement made at the time the lot was purchased, Moras constructed the Degnan home.

Prior to commencing construction, Walter Degnan and Rene Mora discussed the possibility of ground instability in the

2

area. Rene Mora stated that Mora Bros. had encountered no such problem while constructing other homes in the immediate vicinity. On the advice of his architect, Degnan considered having the soil tested anyway. However, that idea was ultimately rejected and no such test was performed.

The house was completed and the Degnans moved in during the summer of 1979. Shortly thereafter, problems began to arise. The entire hillside was slowly moving downward, causing the Degnan house severe structural damage. The house is now uninhabitable. The parties agree that the ground under the house is unstable. However, the cause of that instability is unknown.

Degnans filed suit November 30, 1981, against Executive Homes, Inc., Charles Gamble, ICR Realty, Inc., Mora Bros. and the engineering firm of Christian, Spring, Sielbach & Associates. Summary judgment motions were then filed on behalf of all parties.

The motions of Charles Gamble as real estate salesman, ICR Realty and the engineering firm were granted and those parties were dismissed from the suit. Degnans' motion against Executive Homes as builder-vendor on the issue of the breach of its implied warranty of habitability was granted and is not at issue in this appeal.

Degnans' motions against Mora Bros. as builder-vendor on the issues of negligence and the breach of its implied warranty of habitability were denied. The trial court found an issue of material fact to be unresolved - whether or not Mora Bros. was a builder-vendor.

Further discovery was had, after which Degnans filed a second motion for summary judgment against Mora Bros. on the same issues. Mora Bros. was found to be a builder-vendor and the motion for summary judgment on the issue of breach of the

implied warranty of habitability was granted March 29, 1984. The motion for summary judgment on the issue of negligence was again denied because material issues of fact remained to be resolved: 1) whether Mora Bros. was negligent in constructing the house; and 2) what exactly caused the house to slide?

On appeal, Mora Bros. raises the following issues:

1. The District Court erred in finding that there was a breach of an implied warranty of habitability.

2. The District Court erred in granting summary judgment against Mora Bros. because there was no privity of contract between plaintiffs and Mora Bros.

3. The District Court erred in finding that Mora Bros. was a builder-vendor.

4. The District Court erred in granting summary judgment.

IMPLIED WARRANTY OF HABITABILITY

The liability of a builder-vendor of a new residence to the first purchaser under an implied warranty of habitability was established by this Court in Chandler v. Madsen (1982), 197 Mont. 234, 642 P.2d 1028. We specifically overruled application of the doctrine of caveat emptor to the builder-vendor/buyer relationship and held "the builder-vendor of a new home impliedly warrants that the residence is constructed in a workmanlike manner and is suitable for habitation." Chandler, 197 Mont. at 239, 642 P.2d at 1031. The theory behind the implied warranty of habitability is not one of fault or wrongdoing. Rather, it recognizes that when either an innocent builder-vendor or an innocent seller will suffer, the builder-vendor, as the one in the better position to have prevented the harm, shall be

4

liable to the buyer for that harm. Chandler, 197 Mont. at 240, 642 P.2d at 1032.

The implied warranty of habitability applies to both structural defects and defects in the land underlying the residence. It does not apply where the defect in the land is not enhanced by construction of a house. Chandler, 197 Mont. at 239-240, 642 P.2d at 1031, citing Beri, Inc. v. Salishan Properties, Inc. (Ore. 1978), 580 P.2d 173. In Beri, the defect was ocean-caused erosion of the soil beneath a condominium. The erosion would have occurred whether the condominium was built or not.

In Chandler, one of the defects was the moisture-sensitive soil on which the residence was constructed. Another defect was the "pooling" of water in a depression created by the builder, Robert Madsen. The "pooling" would not have occurred had construction not taken place. We, therefore, held Madsen to be liable to Chandler under the implied warranty of habitability. Chandler, 197 Mont. at 240, 642 P.2d at 1031-1032.

In the fact situation now before us, the defect is the unstable ground beneath the house. The cause of the instability is unknown. Further, there is no evidence the ground would have slid downhill had Degnan's house not been constructed. The builder-vendor is in a better position than is the buyer to determine the effect, if any, of constructing a house on unstable ground. The rationale behind the implied warranty of habitability requires the builder-vendor to bear the burden of producing such evidence.

In Loch Hill Const. Co., Inc. v. Fricke (Md.App. 1979), 399 A.2d 883, the Maryland Court of Appeals placed the burden of proof regarding whether the defect was furthered by construction on the petitioner, builder-vendor:

5

"Yet, unless the vendor can satisfy the trier of fact by probative evidence that the absence of a proper water supply following the transfer of title resulted solely from acts of another for which the vendor was not responsible or was caused by a phenomena of such suddenness and magnitude that it can properly be classified as an 'act of God' (i.e., earthquake), establishing such a water shortage entitles the purchaser to a verdict for the damages he suffered." Fricke, 399 A.2d at 890.

That court went on to hold, "[w]ithout any such evidence, petitioner must bear liability for the well's failure." Fricke, 399 A.2d at 890. We do not agree that the burden of proof should actually shift to defendant. However, we do hold that, once plaintiff showed that the house moved, the burden of coming forward with an explanation shifted to defendant. The defendant failed to provide an explanation, so no genuine issue of fact was created.

Mora Bros. contends that since Degnans knew the land under the rims might be unstable, they are precluded recovery under the implied warranty of habitability. This contention is without merit. The doctrine is not premised upon "knowledge." Rather, it is based on the premise that a builder-vendor is in the better position to have prevented the problem. Chandler, 197 Mont. at 239, 642 P.2d at 1032.

PRIVITY OF CONTRACT

Next, Mora Bros. contends the District Court erred in finding a contract existed between Degnans and Mora Bros. Since there was no privity of contract, Mora Bros. argues, Degnans are precluded from recovering under the theory of implied warranty of habitability.

We agree with the contention that no contract existed between Degnans and Mora Bros. Rene Mora stated at p. 48 of his deposition that Mora Bros. never had a contract with Degnans. Degnans have neither disputed that contention nor produced such a contract. Degnans in fact contracted with

6

Executive Homes. However, this error in the District Court's findings is harmless as the implied warranty of habitability does not depend upon a contract for its existence.

The implied warranty places on the builder-vendor liability for defects in a structure which make it uninhabitable. Gay v. Cornwall (Wash.App. 1972), 494 P.2d 1371, 1373-1374. The theory is derived from that of a seller's warranty.

> "The seller's warranty is a curious hybrid, born of the illicit intercourse of tort and contract, unique in the law. In its inception the liability was based on tort. . . .Thereafter the warranty gradually came to be regarded as a term of the contract of sale, express or implied, for which the normal remedy is a contract action. But the obligation is imposed upon the seller, not because he has assumed it voluntarily, but because the law attaches such consequences to his conduct irrespective of any agreement; and in many cases, at least, to hold that a warranty 'is a contract is to speak the language of pure fiction.'" (emphasis supplied) (citations omitted) W. Prosser, Law of Torts, § 95, pp. 634-635 (4th Ed. 1982).

The duty to present a buyer with a habitable house is a legal duty placed on the builder-vendor of that house. A breach of a legal duty is a tort. Gates v. Life of Montana Insurance Co. (1983), 668 P.2d 213, 40 St.Rep. 1287. Torts do not require privity of contract.

BUILDER-VENDOR

Mora Bros. next contends the District Court erred in finding it to be a builder-vendor because: 1) the Degnans contracted with Executive Homes for the lot and construction work; and 2) the Degnans paid Executive Homes, which then paid Mora Bros. If Mora Bros. is not a builder-vendor, it is not liable to the Degnans under an implied warranty of habitability.

We cannot agree with such a technical application of the term builder-vendor. As stated in the previous section of this opinion, privity of contract is irrelevant to the

7

implied warranty of habitability. Therefore, the fact Degnans contracted with Executive Homes rather than Mora Bros. does not affect the finding that Mora Bros. is a builder-vendor. Mora Bros. built the house for Degnans. Degnans paid to have the house built and Mora Bros. ultimately received one hundred percent of that money, less its expenses. The fact the money was paid to Mora Bros. through Executive Homes is a mere technicality, especially in light of the interrelationship between Moras and Executive Homes.

We affirm the District Court's finding that Mora Bros. was a builder-vendor.

## SUMMARY JUDGMENT

Finally, Mora Bros. contends the District Court erred in granting summary judgment as material facts remain in dispute. Those facts are:

1. Whether Mora Bros. was involved in developing the subdivision?

2. Whether Degnans were in fact required to have Mora Bros. build their house?

3. Whether Mora Bros. was involved in the sale of the lot to Degnans.

4. Whether there was a contract between Mora Bros. and Degnans?

5. Whether Mora Bros. received a profit from the sale of the lot to Degnans?

Our resolution of this matter renders these issues immaterial. Question of fact number four was discussed and resolved in our discussion of the privity issue. The other disputed facts relate to Mora Bros.'s contention that it is not a builder-vendor. Mora Bros. was found to be a builder-vendor because it built Degnan's house pursuant to a series of agreements between Executive Homes, Mora Bros. and

8

Degnans, not because of any connection between Mora Bros. and the sale of the lot by Executive Homes to Degnans.

The order of the District Court finding Mora Bros. liable to Degnans under the theory of implied warranty of habitability is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices