Argued: September 22, 2017 Submitted: September 26, 2017 Decided: August 7, 2018 Rehearing Denied: September 18, 2018
For Appellant McLean & McLean, PLLP: Timothy B. Strauch (argued), Strauch Law Firm, PLLC, Missoula, Montana
For Appellant Michael McLean : Patrick T. Gallagher, Wall, McLean & Gallagher, PLLC, Anaconda, Montana
For Appellee: Martha Sheehy (argued), Sheehy Law Firm, Billings, Montana, Bradley J. Luck, Garlington, Lohn & Robinson, PLLP, Missoula, Montana
For Intervenors and Appellants Michelettis: William M. O'Leary (argued), Fleming & O'Leary, PLLP, Butte, Montana
For Amicus Curiae Property Casualty Insurers Associates of America: Mikel L. Moore, Moore, Cockrell, Goicoechea & Johnson, P.C., Kalispell, Montana
For Amicus Curiae Montana Trial Lawyers Association: Justin P. Stalpes, Beck, Amsden & Stalpes, PLLC, Bozeman, Montana
Justice James Jeremiah Shea delivered the Opinion of the Court.
***238 ¶ 1 Michael McLean, McLean & McLean, PLLP, Miantae McConnell, and Joseph and Marilyn Micheletti challenge the entry of summary judgment in favor of ALPS Property & Casualty Insurance Company ("ALPS") by the Third Judicial District, Deer Lodge County. We restate the issues as follows:
Issue One: Whether the District Court erred by granting summary judgment in favor of ALPS on rescission of the Policy and declaring it void ab initio as to Michael McLean and M&M.
Issue Two: Whether the District Court erred in determining that no coverage existed as to third-party claimants McConnell and the Michelettis.
¶ 2 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 David McLean ("David") and Michael McLean ("Michael"), father and son, practiced law together in the Anaconda firm of McLean & McLean, PLLP ("M&M"). From *654 2008 until 2014, the McLeans and M&M were insured against professional liability under successive, one-year "claims-made" policies issued by ALPS. The last annual term to be covered was from January 1, 2014 to January 1, 2015.
a. David's actions
¶ 4 David represented Paul Lang, a California resident, for claims arising from the death of his brother, Lee Lang, on behalf of Lee's estate. In March 2009, David received $150,000 in insurance proceeds on the claims, which he deposited into M&M's trust account. Over the next three months, David withdrew these proceeds for his personal use and also took another $28,963 from Lee's estate. Prior to his death in ***239 2014, Paul was in poor health and in need of financial support, but David did not respond to Paul's inquiries about the status of Lee's estate. Paul then died. In response to inquiries from the State of Montana about Lee's estate, and from the Riverside County (California) Public Administrator's Office about Paul's estate, David falsely reported that there were no assets in either estate for distribution.
¶ 5 While representing Anaconda Copper City Bowl, Inc., in the sale of a bowling alley, David took at least $30,379 between April 2010 and May 2013 from Copper City Bowl and a brokerage firm assisting with the sale. In response to inquiries about the missing funds, David lied to cover up his theft.
¶ 6 While representing Patricia Lemmon on a personal injury claim in 2010, David settled for $20,000 without Lemmon's consent. David forged her signature, took the money, and told Lemmon the case had been delayed.
¶ 7 While representing Aaron Johnson in an automobile accident case in 2008, David received insurance payments totaling $23,500, which he deposited into M&M's trust account and withdrew the same day for his own use. David remitted only $10,000 to Aaron after either commingling his own funds or misappropriating other client funds. David also represented Aaron in a slip and fall accident in 2011, obtaining a settlement of $103,200, which David deposited in M&M's trust account and withdrew for personal use over a period of three months. David lied to Aaron and Aaron's wife, Lillian, who were elderly and in need of money, about why the funds had not been dispersed to them. Aaron has since passed away.
¶ 8 While representing Laverne Johnson regarding a slip and fall accident, David settled the case without Johnson's permission for $67,500. David then forged Johnson's signature and deposited the settlement check into M&M's trust account in 2012. Within two weeks, David withdrew the entire amount for his personal use and lied to his client about the status of the case.
¶ 9 While representing Miantae McConnell in a dental malpractice claim in July 2013, David settled the case for $60,000 without McConnell's permission, forged her signature, and lied to McConnell about her case being delayed. Within three weeks of depositing the settlement in M&M's trust account, David withdrew all the funds for personal use.
¶ 10 David represented James and Peggy Hareland in a suit against Northwestern Energy, which settled for $4,072 in February 2014.
***240 David deposited the funds in M&M's trust account and withdrew them the same day. He lied to his clients about the status of the case.
¶ 11 Between March 2009 and June 2014, David served as the Secretary/Treasurer of the Montana Chapter of the American Board of Trial Advocates ("ABOTA"). He stole between $32,714 and $34,950 from ABOTA accounts by forging signatures on checks and falsifying bank statements.
¶ 12 In January 2015, the Commission on Practice ("COP") entered findings regarding these matters, which were subsequently approved by this Court. In the Matter of David M. McLean , No. PR 14-0737, Or. (Mont. Mar. 17, 2015). The COP determined that David's thefts commonly involved settling cases without client permission, forging client signatures, depositing the funds into M&M's trust account, disbursing funds to himself, and making false statements to clients and other parties that were designed to cover-up his actions. The COP found that additional thefts had likely occurred, but based upon *655 the record as constituted, determined that David stole at least $522,564.
b. Insurance conduct and claims
¶ 13 During their engagement with ALPS, the McLeans and M&M annually submitted a policy renewal application. Their last renewal application was dated and submitted November 14, 2013, for purposes of renewing coverage for the 2014 policy year ("2013 Application"). As in past years, David, on behalf of M&M and in his capacity as an individual attorney of M&M, and Michael, in his capacity as an individual attorney of M&M, separately answered the following question on the 2013 Application:
Are you aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you, regardless of the merit of such claim? If yes, please complete a Claim Information Supplement for each claim or potential claim.
(Emphasis in original.) David and Michael both answered "no" to this question and provided no supplemental information about any fact or claim. David and Michael then signed their respective names under the following statement on forms labeled "Individual Attorney Supplement":
I understand information submitted herein becomes a part of my firm's Professional Liability Application and is subject to the same terms and conditions.
M&M was the "Named Insured" under the Policy, while David and Michael were listed as "insured attorneys."
***241 ¶ 14 On July 22, 2014, a staff member at M&M noticed irregularities in M&M's IOLTA trust account and informed Michael. Michael reviewed the trust account and confronted David the same day. The next day, both Michael and David reported the thefts to the Office of Disciplinary Counsel ("ODC"). The day after that, Michael reported the matter to ALPS.
¶ 15 In August 2014, ALPS received notice from McConnell and Lillian Johnson of their claims. ALPS accepted defense of the claims, subject to, as stated in its letters, "a full reservation of its rights including, but not limited to, its right to rescind the Policy and to recoup any defense costs.... If the Policy is rescinded, the Policy would afford no coverage...." On August 20, 2014, ALPS sent M&M a notice of cancellation of the Policy, effective September 4, 2014, for nonpayment of premiums.[1] ALPS then canceled the Policy, refunding excess premiums of $231.41 to the McLeans and refused to accept further premiums. On September 11, 2014, Michael sent a letter to ALPS asserting that he appeared to fit the definition of an "innocent insured" under Section 4.3 of the Policy. Michael's letter did not dispute that the Policy had been properly cancelled, but he requested tail coverage, or extended coverage after the cancellation or termination of a claims-made policy, for himself alone, under the Extended Reporting Period Endorsement ("ERE") Provision 4.4.1. On September 24, 2014, Michael sent a second letter to ALPS, asserting that notice of the cancellation was defective, returning the $231.41 pro-rated cancellation check, and requesting that ALPS apply the $231.41 toward the premium for an ERE. The same day, ALPS sent Michael a letter stating that ALPS would provide Michael with a defense with respect to certain claims, subject to a reservation of rights, including the right to rescind the Policy.
¶ 16 On September 26, 2014, after investigating the matter, ALPS
***242 notified the McLeans that it was rescinding the Policy as to M&M. The notice of rescission purported to rescind coverage as of January 1, 2014. ALPS refunded all premiums that had been *656 paid for the policy term: $6,657.59. ALPS provided the following reason for rescission:
You are hereby notified in accordance with the terms and conditions of the above mentioned Claims Made Lawyers Professional Liability [P]olicy, and in accordance with the law, that the above mentioned policy is rescinded as of the inception date with no coverage being afforded.
Reason(s) for rescission of coverage of insurance:
Misrepresentation, omission, concealment of facts, and incorrect statements by the Named Insured in the application for insurance which were fraudulent and material to the acceptance of the risk and hazard assumed by the Company. The Company in good faith would not have issued the policy if the true facts had been made known to the Company as required by the application for insurance or otherwise.
¶ 17 The McLeans refused the refunded premiums. On October 8, 2014, ALPS filed this declaratory action, seeking a declaration that the Policy was properly rescinded or, in the alternative, that there was no coverage for claims made under the Policy, and seeking reimbursement of defense costs. M&M counterclaimed, seeking a declaration that the Policy was still in force and claiming damages for breach of contract. Michael counterclaimed in his individual capacity, seeking similar remedies and adding several claims, including infliction of emotional distress, violation of the Montana Unfair Claims Practices Act, and breach of contact for refusing to recognize him as an "innocent insured" under the Policy and refusing to issue an ERE.
¶ 18 After ALPS filed this declaratory action, Joseph and Marilyn Micheletti ("Michelettis") notified ALPS of a potential malpractice claim against David, unrelated to the thefts. David had been retained by the Michelettis in a slip and fall accident, which occurred in a Costco retail store in Colorado. David filed suit against Costco in Montana shortly before Montana's three-year statute of limitations had expired. Costco asserted the affirmative defense that Colorado's two-year statute of limitations applied, thus barring the Michelettis' claim. When David's thefts became known, the Michelettis obtained new counsel and entered into a settlement with Costco, which the Michelettis assert was discounted due to the statute of limitations issue. The Michelettis intervened in this action, seeking coverage under the Policy for their claim against David.
***243 ¶ 19 As a result of a disciplinary proceeding initiated by ODC, David was disbarred and ordered to pay restitution for his thefts. David pled guilty to two counts of federal wire fraud, and was sentenced to a forty-two month federal prison term.
¶ 20 The District Court in this action granted summary judgment to ALPS. It determined that ALPS properly rescinded the policy, which rendered it void from the inception of the coverage period for David, Michael, M&M, and the third-party claimants. The District Court also held, even absent a valid rescission, the third-party claims, including the Michelettis' claim, were not covered under the terms of the Policy.
¶ 21 M&M, Michael, McConnell,[2] and the Michelettis' appeal, challenging the District Court's determinations that rescission was proper, that Michael and M&M are not entitled to coverage as innocent insureds, that McConnell is not entitled to coverage, and that the Michelettis are not entitled to coverage for their non-theft related claims. Michael also claims eligibility to purchase an ERE to extend coverage after the expiration of the 2014 Policy term.
STANDARD OF REVIEW
¶ 22 We review a district court's summary judgment ruling de novo. Wendell v. State Farm Mut. Auto Ins. Co. , 1999 MT 17, ¶ 9, 293 Mont. 140, 974 P.2d 623. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c) ;
*657 Modroo v. Nationwide Mut. Fire Ins. Co. , 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389. Once the moving party has met its burden of establishing an absence of genuine issues of material fact and entitlement to judgment as a matter of law, the non-moving party must present material and substantial evidence, rather than mere conclusory or speculative statements. Smith v. Burlington N. & Santa Fe Ry. , 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639 ; Wendell , ¶ 9. This Court reviews a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. Pilgeram v. GreenPoint Mortg. Funding, Inc. , 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.
***244 DISCUSSION
¶ 23 Issue One: Whether the District Court erred by granting summary judgment in favor of ALPS on rescission of the Policy and declaring it void ab initio as to Michael McLean and M&M.
¶ 24 A party may rescind a contract if the rescinding party's consent was "obtained through duress, menace, fraud, or undue influence...." Section 28-2-1711, MCA. To accomplish a non-consensual rescission, the rescinding party "shall rescind promptly upon discovering the facts that entitle the party to rescind.... [and] [t]he rescinding party shall restore to the other party everything of value that the rescinding party has received from the other party ... or shall offer to restore everything of value...." Section 28-2-1713, MCA. Courts may consider principles of equity and "may require the party to whom [rescission] is granted to make any compensation or restoration to the other which justice may require." Section 28-2-1716, MCA.[3]
¶ 25 Title 33 governs the formation and termination of insurance contracts specifically. The statute upon which the District Court relied in holding that ALPS was entitled to rescission of the policy provides as follows:
(1) All statements and descriptions in any application for an insurance policy or annuity contract or in negotiations for an insurance policy or annuity contract by or on behalf of the insured or annuitant are considered representations and not warranties.
(2) Misrepresentations, omissions, concealment of facts, and incorrect statements do not prevent a recovery under the policy or contract unless:
(a) fraudulent;
(b) material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(c) the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as ***245 required either by the application for the policy or contract or otherwise.
Section 33-15-403, MCA. Section 33-15-403, MCA, was a clear repudiation of the common law of warranties but also created a narrow remedy at law for insurers to "prevent a recovery" under an insurance policy if the specific elements of the statute, regarding statements made during the application process, were established.
¶ 26 Notably, § 33-15-403, MCA, does not use the term, "rescission" of the policy, or the more modern terms "unilateral rescission" and "avoidance," to describe the remedy for fraud or material misrepresentation in the insurance application process. Rather, § 33-15-403, MCA, states that "a recovery under the policy" may be "prevent[ed]" if the misrepresentations, omissions, concealment of facts, or incorrect statements were fraudulent, material, or would have affected the insurer's decision to issue the policy. Section 33-15-403, MCA. Our early case law applying § 33-15-403, MCA, and its predecessor, lacks substantive analysis importing a right of rescission into the statute. See *658 Lentz v. Prudential Ins. Co. , 164 Mont. 197, 204, 520 P.2d 769, 772 (1974) (citing McLane v. Farmers Ins. Exch. , 150 Mont. 116, 118, 432 P.2d 98, 99 (1967) ). Nevertheless-and notwithstanding the absence of any rescission language in the statute-the progeny of Lentz[4] have described the statute as a "rescission" provision that voids a policy ab initio when the statutory elements of both § 33-15-403, MCA, and § 28-2-1713, MCA, are satisfied, without precisely distinguishing its legal remedy from the general equitable remedy of rescission upon fraudulent inducement. See e.g., ***246 Steinback v. Bankers Life & Cas. Co. , 2000 MT 316, ¶¶ 12, 19, 302 Mont. 483, 15 P.3d 872 (affirming the district court's ruling that the insurance company was entitled to rescind a policy pursuant to § 33-15-403, MCA ); Mount Vernon Fire Ins. Co. v. Gabelhausen, 2017 WL 2960204, 2017 U.S. Dist. LEXIS 106125, at *22, *28 (D. Mont. July 10, 2017) (rescission of an insurance contract permitted pursuant to § 33-15-403, MCA ).
¶ 27 Here, the District Court's holding rests entirely upon the premise that § 33-15-403, MCA, bestows a right of rescission on insurance providers. The District Court's conclusion is understandable to the extent that this Court's previous rulings, cursory as they may have been, appear to read § 33-15-403, MCA, and § 28-2-1713, MCA, in pari materia , to allow for the substantive remedy of rescission. The Dissent agrees, contending:
[Section] 33-15-403, MCA, created a rescission remedy at law, applicable in a narrow, specific set of circumstances-in the insurance contract only, in the application process only, to which the insurer is entitled to relief only if the elements of the statute are established. Additional equitable considerations such as those 'which justice may require' stated in § 28-2-1716, MCA, are not considered, because the Legislature has provided a precise definition of materiality allowing rescission in § 33-15-403, MCA....
Dissent, ¶ 45. This contention illustrates precisely the legal infirmity-as well as the inequity-of such an interpretation. This Court has selectively grafted the remedy of rescission onto § 33-15-403, MCA, via § 28-2-1713, MCA, while simultaneously disallowing, with no explanation or legal basis whatsoever, any consideration of equitable exceptions as would otherwise be provided by § 28-2-1716, MCA, or by common law. The result is a hodgepodge that, for innocent insureds such as Michael, is all stick and no carrot. Under the Dissent's rationale, an innocent insured can pay premiums for years; then, upon finding out that a partner has committed acts of malfeasance, immediately report the malfeasance to the appropriate authorities and the insurer-precisely as the policy requires-and yet despite having done nothing wrong himself, he has no reasonable expectation that his own coverage will continue because no justice is required in that scenario.
¶ 28 Section 28-2-1713, MCA -which applies to contracts generally-sets forth the necessary procedures to rescind a contract without the mutual consent of the parties. Section 33-15-403, MCA -which applies specifically to insurance policies-sets forth the ***247 substantive remedies available to an insurer. Significantly absent from those substantive remedies is the right of rescission. When the Legislature has adopted a statutory scheme that sets forth the remedies available specifically in the insurance policy context, it is not the province of this Court to selectively incorporate remedies from a more general statutory scheme. "When a general and particular provision are inconsistent, the latter is *659 paramount to the former, so a particular intent will control a general one that is inconsistent with it." Section 1-2-102, MCA ; State v. Feight , 2001 MT 205, ¶ 21, 306 Mont. 312, 33 P.3d 623. Thus, it is irrelevant that the District Court held that ALPS satisfied the procedures of § 28-2-1713, MCA, because § 33-15-403, MCA, does not provide for the substantive right of rescission.
¶ 29 The Dissent contends that this Court cites to "no supportive authority [ ] to conclude that § 33-15-403, MCA, does not provide for rescission of an insurance contract." Dissent, ¶ 43. In fact, the authority is the plain language of the statute itself. A plain language reading of § 33-15-403, MCA, belies the notion that the statute allows for rescission of an insurance policy. When a policy is rescinded, it is as though it never were. Jacobsen v. Allstate Ins. Co. , 2009 MT 248, ¶ 51, 351 Mont. 464, 215 P.3d 649 (quoting Black's Law Dictionary 1306 (6th ed. West 1990) ). Yet the very statute upon which the District Court relied to render the Policy in this case "as though it never were," expressly provides that certain misrepresentations, omissions, concealment of facts, and incorrect statements will "prevent a recovery under the policy " (emphasis added). It is axiomatic that recovery cannot be prevented "under a policy" that never existed.
¶ 30 When interpreting statutes, "the goal ... is to give effect to the legislature's intent, begin[ning] with the text of the statute." Giacomelli v. Scottsdale Ins. Co ., 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666 ; Smith , ¶ 22 ("[t]he starting point for statutory interpretation is the plain language of the statute itself...."). "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. By its plain language, § 33-15-403(2), MCA, allows for the prevention of a recovery under the policy. This is the remedy the Legislature created. It is not the province of this Court to insert a remedy of rescission into a statute where none exists. Although the Dissent correctly notes that we are overruling precedent that incorrectly inserted the remedy of rescission into § 33-15-403, MCA, Dissent, ¶¶ 43, 47, stare decisis does not require us to perpetuate ***248 incorrectly-decided precedent. To the contrary, we are obligated to overrule precedent where it appears the "construction manifestly is wrong." E.g., State ex rel. Perry v. Dist. Ct. , 145 Mont. 287, 310, 400 P.2d 648, 660 (1965). This Court judicially amended § 33-15-403, MCA, in violation of § 1-2-101, MCA, and fundamental cannons of statutory construction. Insofar as our prior case law incorrectly perpetuated this error, those cases are overruled.[5]
¶ 31 It must be noted, however, that even absent the remedy of rescission, ALPS may properly deny coverage under § 33-15-403, MCA, for claims made against David and M&M because of David's misrepresentations on the application, both in his individual capacity, and as the representative of M&M. Neither party, nor this Court, contests that ALPS was within its rights to prevent any recovery sought under the Policy as to David *660 and prospectively bar claims attributable to him. M&M also acknowledged that it is not entitled to Innocent-Insured Coverage under the Policy, which excludes coverage for the "Named-Insured" entity. David's bad acts, and knowledge of the bad acts, were imputed to M&M, therefore barring any recovery on the firm's part; however, such knowledge is not imputed to Michael. See e.g., Great Am. Ins. Co. v. Christy , 164 N.H. 196, 203, 53 A.3d 538, 544 (2012) ("[t]he innocent insured provision shows that the parties intended to distinguish actual from imputed knowledge and not to ***249 penalize insureds who did not have actual knowledge of wrongful acts...."). The prevention of recovery under the Policy as to David and M&M does not bear on the Policy's application to Michael or Michael's ability to purchase an ERE.
¶ 32 Because the Policy was not rescinded, Michael had a reasonable expectation of retaining malpractice liability insurance and the option to purchase an ERE based on Policy provisions and his lack of culpability. "The interpretation of an insurance contract is a question of law." Meadow Brook, LLP v. First Am. Title Ins. Co. , 2014 MT 190, ¶ 14, 375 Mont. 509, 329 P.3d 608 (internal citations omitted). "A court should interpret terms in an insurance policy according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products." Parker v. Safeco Ins. Co. of Am. , 2016 MT 173, ¶ 14, 384 Mont. 125, 376 P.3d 114. Insurance policies are construed against the insurer and in favor of the insured. Parker , ¶ 14 ; Christensen v. Mt. W. Farm Bureau Mut. Ins. Co. , 2000 MT 378, ¶ 27, 303 Mont. 493, 22 P.3d 624 (holding that it "is the rule of construction in Montana that language of limitation or exclusion must be clear and unequivocal; otherwise, the policy will be strictly construed in favor of the insured...."). While the language of an insurance policy governs if it is clear and explicit, Truck Ins. Exch. v. Waller , 252 Mont. 328, 331, 828 P.2d 1384, 1386 (1992), exclusions from coverage will be narrowly and strictly construed because they run "contrary to the fundamental protective purpose of an insurance policy," Farmers Union Mut. Ins. Co. v. Oakland , 251 Mont. 352, 356, 825 P.2d 554, 554 (1992) ; see also Duensing v. Traveler's Cos. , 257 Mont. 376, 380, 384, 849 P.2d 203, 206, 208 (1993).
¶ 33 The reasonable expectations doctrine provides that "the objectively reasonable expectations of insurance purchasers regarding their policy terms should be honored, even if a painstaking study of the policy negates expectations." Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co. , 2017 MT 246, ¶ 10, 389 Mont. 48, 403 P.3d 664.
¶ 34 The District Court dismissed Michael's contention that he reasonably expected coverage under the Policy based on its initial erroneous conclusion that the Policy was rescinded under operation of § 33-15-403, MCA. The District Court held: "Given this clear language of rescission based upon misrepresentation and in the context of the Policy as a whole, it would be unreasonable for Michael [ ] to expect that ALPS could not rescind the Policy for misrepresentations in the ***250 Policy's application with respect to him."[6]
¶ 35 Section 4.3 of the Policy provides:
4.3 INNOCENT-INSURED COVERAGE
4.3.1 Whenever a Claim otherwise covered by this Policy would be excluded based on Section 3.1.1, coverage will be afforded to any individual Insured who did not personally commit, or personally participate in committing, any such act, error or omission, or in causing such Personal Injury, and who did not remain passive after learning of the act, error, omission, or Personal Injury, provided that each such individual Insured shall have immediately notified the Company and complied with all obligations under this Policy once said Insured obtained knowledge of the act, *661 error, omission or Personal Injury. Nothing in this section shall be interpreted to affect any coverage to a Named Insured that is an entity other than an individual.
Section: 3.1 of the Policy provides:
3.1 THIS POLICY DOES NOT APPLY TO ANY CLAIM ARISING FROM OR IN CONNECTION WITH:
3.1.1 Any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from such conduct, subject to Section 4.3 of this Policy ("innocent insured coverage").
¶ 36 The inclusion of an Innocent-Insured Provision evinces the parties' intent "to distinguish from actual imputed knowledge and not to penalize insureds who did not have actual knowledge of wrongful acts." Christy , 164 N.H. at 203, 53 A.3d at 544. The explicit purpose of the Innocent-Insured Provision was to protect individual insured attorneys in the face of deliberate misconduct by a fellow insured. The Innocent-Insured Provision does not create an additional basis for Policy coverage. Rather, the Innocent-Insured Provision, read in conjunction with the ERE Provision, created a reasonable expectation that Michael would be able to purchase ERE coverage when he himself remained ***251 blameless.
¶ 37 A study of this Policy does not negate Michael's reasonable expectations of continued coverage. See Kilby Butte Colony, Inc. , ¶ 10. There is no dispute that Michael conducted himself exactly as the Policy required when he discovered David's criminal activity.[7] On the same day that he was notified of irregularities in M&M's IOLTA trust account, he confronted David. The next day, he reported the thefts to the ODC. The day after that, he reported the matter to ALPS. Michael reasonably contends that his compliance with the Innocent-Insured Provision of the Policy gave him a reasonable expectation that he would remain covered. It makes no sense to conclude that even though Michael is the very definition of an "innocent insured," and he "immediately notified [ALPS] and complied with all obligations under this Policy once [he] obtained knowledge of the act, error, omission or Personal Injury," in strict compliance with Section 4.3.1, he could have no reasonable expectation that the section would apply to him because the District Court chose to read a rescission provision into § 33-15-403, MCA.
¶ 38 Regarding Michael's expectation of purchasing ERE coverage, Section 4.4.5 of the Policy provided that "[n]o Extended Reporting Period Endorsement ... shall be available to the Named Insured " (emphasis added) if ALPS "cancels or rescinds this Policy or any other policy for misrepresentation in any application...." The District Court concluded it would be unreasonable for Michael to expect an ERE was available to him if ALPS rescinded the Policy for a misrepresentation on any Policy application. There are two fundamental flaws with the District Court's conclusion in this regard. First, as noted above, the Policy was not properly rescinded. Second, Michael was not the "Named Insured," M&M was. Thus, the prohibition on securing ERE
***252 coverage did not apply to him.[8]
*662 ¶ 39 Issue Two: Whether the District Court erred in determining that no coverage existed as to third-party claimants McConnell and the Michelettis.
¶ 40 Not everyone who may benefit from performance or suffer from nonperformance of a contract between two other parties may enforce the contract. Kurtzenacker v. Davis Surveying, Inc. , 2012 MT 105, ¶ 20, 365 Mont. 71, 278 P.3d 1002 (citing Diaz v. Blue Cross & Blue Shield of Mont. , 2011 MT 322, ¶ 18, 363 Mont. 151, 267 P.3d 756 ). "A plaintiff cannot assume that he is an intended third-party beneficiary; rather he must show from the face of the contract that it was intended to benefit him." Williamson v. Mont. Pub. Serv. Comm'n , 2012 MT 32, ¶ 40, 364 Mont. 128, 272 P.3d 71. However, if a third-party can show a promise in a contract creates a duty in the promisor to an intended beneficiary to perform the promise, then the intended beneficiary may enforce the duty. See Harman v. MIA Serv. Contracts , 260 Mont. 67, 72, 858 P.2d 19, 22-23 (1993) (citing Restatement (Second) of Contracts § 304 (1981) ). A "claims-made" policy is triggered when a claim is made against the insured during the policy period, regardless of when the wrongful act that gave rise to the claim occurred. See Herron v. Shultz-Foss Architects , 282 Mont. 94, 96-97, 101-02, 935 P.2d 1104, 1105-06, 1108-09 (1997).
¶ 41 Although we have held that the policy was not rescinded and rendered void ab initio, as noted above, ALPS may properly deny coverage under § 33-15-403, MCA, for claims made against David and M&M because of David's misrepresentations on the application, both in his individual capacity, and as the representative of M&M, Opinion, ¶ 30, and under the other exclusionary provisions of the Policy. See Policy §§ 3.1., 3.1.1 ("[t]his policy does not apply to any claim arising from or in connection with: [a]ny dishonest, fraudulent, criminal, malicious or intentionally wrongful or harmful act, error or omission committed by ... an Insured, or any Personal Injury arising from such ***253 conduct...."). ALPS cancelled the Policy on August 20, 2014, effective September 4, 2014. The Michelettis' claim against David and M&M was first reported to ALPS over one month after notice of the cancellation of the Policy. The Policy was a claims-made Policy. The Michelettis' claim was not made or reported during the Policy period, thus the claim is not viable. See Herron , 282 Mont. at 96-97, 101-02, 935 P.2d at 1105-06, 1108-09. Although McConnell filed her claim prior to ALPS's September 4, 2014 cancellation, the claim was properly excluded from coverage under Section 3.1.1 of the Policy. The District Court did not err when it determined that the third-party claimants could not recover under the Policy.
CONCLUSION
¶ 42 The District Court erred when it concluded § 33-15-403, MCA, provided for a right to rescind the Policy. ALPS was within its rights to prevent recovery under the Policy as to David and M&M, but not as to Michael. Further, Michael reasonably expected he would be entitled to purchase an ERE under the Policy. The District Court did not err when it concluded that McConnell and the Michelettis' third-party claims were barred because their claims were lodged against David after ALPS had cancelled the Policy or were excluded from coverage under other Policy provisions. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.
We Concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
LAURIE McKINNON, J.

The letter stated in pertinent part:
CANCELLATION: You are hereby notified in accordance with the terms and conditions of the above mentioned Claims Made Lawyers Professional Liability [P]olicy, and in accordance with the law, that your insurance policy ... will be cancelled effective [September 4, 2014]....
REASON(S) FOR CANCELLATION OF INSURANCE: We are cancelling your insurance policy and the insurance coverage provided therein for the following reason(s):
Non-payment of Premium: $1422.10
(Emphasis in original.)

McConnell filed a notice of appeal but did not file a brief. She joins in M&M and Michael's appeal of the judgment.

The common law equitable remedy of rescission is also available to contracting parties and is not limited to the circumstances set forth in Title 28. Pracht v. Rollins , 239 Mont. 62, 68, 779 P.2d 57, 61 (1989) ("[w]hile many of our common law principles have been codified in statutes, a court of equity nonetheless is not bound by the codified laws when fashioning an equitable result....").

Despite describing the statute as a rescission provision, most case law analyzed whether an insurer properly prospectively denied an insured's claim for recovery after discovering material misrepresentations in the policy application. See e.g., Schneider v. Minn. Mut. Life Ins. Co. , 247 Mont. 334, 340-41, 806 P.2d 1032,1036-37 (1991) (holding that a district court did not abuse its discretion when it concluded that the insurer could not deny coverage following revelations of medical information that was false but not material and where the insurer did comply with its own procedures); see also Schlemmer v. N. Cent. Life Ins. Co. , 2001 MT 256, ¶¶ 18, 20, 22, 25, 307 Mont. 203, 37 P.3d 63 (this Court declined to address whether the misrepresentation on the application for health insurance served as a basis to rescind the policy because Schlemmer did not properly raise the argument at the district court. Instead, we limited our holding on this issue to affirming that the district court did not err in concluding Schlemmer materially misrepresented his health on a liability insurance application).

The Dissent asserts that the District Court held that ALPS had established that it was entitled to rescind the contract under the common law and § 28-2-1713, MCA. Dissent, ¶ 53. This is incorrect. The District Court made no holding as to ALPS's right to rescind in any fashion independent of § 33-15-403, MCA. The District Court's error, therefore, was in granting summary judgment to ALPS based on its determination that ALPS could rescind under § 33-15-403, MCA. Although the District Court held that ALPS satisfied the statutory requirements of § 28-2-1713, MCA, this is the statute that sets forth the procedure as to "[h]ow rescission [is] accomplished." The substantive basis for rescission in Title 28 is found at § 28-2-1711, MCA ("[w]hen party may rescind"), which the District Court did not address. Nor did the District Court address rescission under the common law. The Dissent asserts that, based on the District Court's findings, ALPS implicitly met the common law requirements for rescission. Dissent, ¶ 53. However, whether rescission may be accomplished via the common law is not before us. Moreover, as it pertains to Michael, the District Court did not address any equitable considerations as would be required for rescission under the common law. See Pracht , 239 Mont. at 68, 779 P.2d at 61. This holding neither sanctions nor forecloses the possibility that the remedy of rescission via the common law is available generally, or as it pertains to ALPS in this case. This holding does foreclose the selective conflation of certain portions of Titles 28 and 33 to allow rescission as a remedy that is not otherwise provided for by the language of § 33-15-403, MCA.

The Dissent agrees with the District Court and further contends it would be "reasonable to expect there would be no coverage when a policy has been issued upon deception that concealed an extensive misappropriation scheme...." Dissent, ¶ 56. Based on the Dissent's rationale, if one lawyer in a 100-person law firm lied on an insurance application, the other ninety-nine premium-paying lawyers would be excluded from coverage and exposed to potential liability, notwithstanding a complete lack of culpability on their part.

The Dissent contends that because the District Court entered summary judgment without consideration of Michael's culpability, this Court wrongly assumes Michael's innocence. Dissent, ¶ 62. However, no party to the litigation has contended that Michael had any culpability or involvement in David's wrongdoings or asserts Michael does not meet the Policy definition of an "innocent insured." Section 4.3.1 of the Policy:
[An individual Insured] who did not personally commit, or personally participate in committing, any such act, error or omission ... and who did not remain passive after learning of the act, error, [or] omission ... [and who] immediately notified the Company and complied with all obligations under this policy....

The Dissent dismisses Michael's right to purchase ERE coverage by noting that "[w]hile Michael was technically not the 'Named Insured,' but rather an Insured Attorney, this distinction was not sufficient to permit an objectively reasonable expectation that he would be permitted to purchase tail coverage following rescission of the [P]olicy by ALPS for misrepresentation." Dissent, ¶ 59. To be clear, Michael was not just "technically" not the Named Insured. He was not the Named Insured in any way, shape, or form. This is akin to saying that Michael had no reasonable expectation to purchase ERE coverage because he "was technically not David."