FILED

03/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0467

DA 22-0467

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 51

TESSA ZOLNIKOV,

       Plaintiff and Appellant,

  v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

       Defendant and Appellee.

APPEAL FROM:   District Court of the Fourteenth Judicial District,
In and For the County of Musselshell, Cause No. DV-20-37
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Robert Farris-Olsen, Morrison Sherwood Wilson Deola, PLLP,
Helena, Montana

      For Appellee:

          Mark D. Parker, Parker, Heitz & Cosgrove, Billings, Montana

                        Submitted on Briefs:  January 19, 2023

                                Decided:  March 28, 2023

Filed:

                _____
                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Tessa Zolnikov appeals the Fourteenth Judicial District Court's decision affirming the Montana Human Rights Commission's dismissal of her discrimination claim as untimely. The National Board of Medical Examiners (NBME) denied Zolnikov's appeal for test-taking accommodations on December 12, 2018. Zolnikov filed a discrimination complaint against the NBME with the Montana Human Rights Bureau on June 12, 2019. The District Court agreed with the Human Rights Commission that her complaint was not timely filed within 180 days of December 12, 2018—the date when the alleged discriminatory act occurred and Zolnikov discovered it. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 For the purposes of this appeal, we look to Zolnikov's complaint and take as true the following allegations of fact. Zolnikov is a Montana resident attending the University of Washington as a medical student. Based on documented disabilities, the University provides Zolnikov with test-taking accommodations: additional time to complete her exams along with the option to take her exams in a reduced distraction environment.

¶3 As a medical student, Zolnikov must pass three separate tests—Step 1, Step 2, and Step 3—that make up the United States Medical Licensing Examination. The NBME administers these three exams. Zolnikov first attempted the Step 1 exam on June 21, 2018. She did not request accommodations for this exam and failed by one point. Zolnikov registered to take the Step 1 exam again. This time she requested that the NBME provide her with test-taking accommodations similar to those provided by the University. The

2

NBME denied Zolnikov's request for accommodations on November 19, 2018, citing insufficient evidence to verify her need for the accommodations. On December 8, 2018, Zolnikov appealed the NBME's denial of her accommodations request. The NBME denied her appeal on December 12, 2018. Zolnikov took the Step 1 exam on December 14, 2018, and passed by two points.[1]

¶4    Zolnikov filed a complaint against the NBME with the Human Rights Bureau on June 12, 2019, alleging that the NBME discriminated against her for having a mental disability when it denied her request for accommodations. The Human Rights Bureau dismissed the complaint on the basis that Zolnikov filed it outside of the 180-day statutory time limit. Zolnikov appealed the Human Rights Bureau's decision to the Montana Human Rights Commission; it agreed with the Human Rights Bureau and entered a final agency decision that Zolnikov's complaint was time-barred because she failed to file it within 180 days of December 12, 2018.

¶5    Zolnikov petitioned the District Court to review the final agency decision. The NBME moved the court to dismiss Zolnikov's petition on the grounds that she did not file her complaint to the Human Rights Bureau within the appropriate statutory time limits. The District Court affirmed the Human Rights Commission, concluding that the statute of

---

[1] Zolnikov's Opening Brief to this Court and Complaint to the Human Rights Bureau present a narrative that differs from the facts alleged in her Petition for Review filed with the District Court. Her Petition does not represent that she took the June exam. Zolnikov's Petition to the District Court alleges that she was denied accommodations on November 19, 2018, appealed the denial on December 8, 2018, and was denied her appeal on December 12, 2018. She then took the Step 1 exam on December 14, 2018, and failed by one point. We take the facts as alleged in her Human Rights Bureau Complaint to be true for the purposes of this appeal.

limitations for Zolnikov's discrimination complaint started to run on the date that the NBME denied her appeal for accommodations—December 12, 2018—rather than the date she took the Step 1 exam without accommodations—December 14, 2018. The court, accordingly, dismissed Zolnikov's petition for review.[2]

## STANDARD OF REVIEW

¶6      The Montana Administrative Procedure Act provides standards of judicial review for final agency decisions entered by the Human Rights Commission. *Blaine Cty. v. Stricker*, 2017 MT 80, ¶ 16, 387 Mont. 202, 394 P.3d 159. The following standards, as applicable here, govern "both the District Court's review of the agency's decision and this Court's subsequent review of the District Court's decision":

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>     (a) the administrative findings, inferences, conclusion, or decisions are:
>         (i) in violation of constitutional or statutory provisions; [or]
>                     .   .   .
>         (iv) affected by other error of law[.]

---

[2] In its order dismissing Zolnikov's petition, the District Court wrote that her claim started to accrue December 12, 2018. Zolnikov's complaint to the Human Rights Bureau, therefore, was due within 180 days of December 12, 2018, which the court incorrectly noted was June 12, 2019. The District Court concluded that Zolnikov was late because she did not file her complaint until June 14, 2019. Zolnikov filed her complaint on June 12, 2019, but the Human Rights Bureau dismissed it because her complaint was due by June 10, 2019. The parties do not dispute that 180 days from December 12, 2018, is June 10, 2019, arguing on appeal only what date the claim started to accrue. We consider the District Court's discrepancy a scrivener's error.

*Blaine Cty.*, ¶ 16 (citing § 2-4-704(2), MCA). "[D]eference is not applied to a district court's conclusions of law, which are reviewed de novo to determine whether its interpretation of the law is correct." *Blaine Cty.*, ¶ 17 (citation omitted).

**DISCUSSION**

¶7     "A person claiming to be aggrieved by any discriminatory practice prohibited by [the Montana Human Rights Act]" may file a complaint with the Bureau so long as the complaint is filed "within 180 days after the alleged unlawful discriminatory practice occurred or was discovered." Section 49-2-501(1) and (4)(a), MCA. We considered when the 180 days start to accrue in *Hash v. U.S. West Communications Services*, 268 Mont. 326, 886 P.2d 442 (1994), and *Skites v. Blue Cross Blue Shield of Montana*, 1999 MT 301, 297 Mont. 156, 991 P.2d 955.

¶8     In *Hash*, an employee was informed on June 19, 1991, that her position at U.S. West was set to be combined with another, thus eliminating her job. 268 Mont. at 328, 886 P.2d at 443. The employee waited to file a discrimination complaint until after she was terminated on January 31, 1992. *Hash*, 268 Mont. at 328, 886 P.2d at 443. After the Equal Employment Office found no discrimination in her termination, the employee filed her allegations of discrimination with the Human Rights Commission on June 5, 1992. *Hash*, 268 Mont. at 328-29, 886 P.2d at 443. The Human Rights Commission informed the employee that it had no authority over the matter because the allowable time to file her complaint had expired. *Hash*, 268 Mont. at 329, 886 P.2d at 443.

5

¶9    We held that the discriminatory act giving rise to the employee's claim, and thus triggering the 180-day time limit on filing, was U.S. West's notification to the employee of its decision to eliminate her position; this notice was when the employee "discovered the alleged discriminatory practice."[3]  *Hash,* 268 Mont. at 329, 886 P.2d at 444.  The employee argued that the date her claim should start to accrue should have been when she was terminated because she "hoped and believed, up to the time of termination, that she would be given another U.S. West position."  *Hash,* 268 Mont. at 329, 886 P.2d at 444. This Court concluded that the employee's "hopes and beliefs [could not] contradict the fact that she discovered the alleged discriminatory act(s) on June 19, 1991," when she was notified that her position was set to be terminated.  Because the employee was time-barred from bringing a complaint to the Human Rights Commission, she was also time-barred from subsequently bringing her discrimination claim to the district court.  *Hash,* 268 Mont. at 331, 886 P.2d at 445.

¶10    In *Skites*, an employee alleged that her employer, Blue Cross, discriminated against her based on a physical disability.  *Skites*, ¶ 3.  In her complaint filed with the Human Rights Bureau, she alleged that Blue Cross failed to accommodate her disability on January 2, 1996, and that "the date the most recent or continuing discrimination took place was April 15, 1996."  *Skites*, ¶ 3.  After the Human Rights Bureau and the Human Rights

---

[3] When we considered the statutory limitation in *Hash*, the language that is now found in § 49-2-501(4)(a), MCA, was contained in § 49-2-501(2)(a), MCA.  The Legislature amended the statute in 1997, moving the applicable language to subsection (4)(a).

Commission dismissed the employee's complaint for failure to timely file it "within 180 days of the alleged discriminatory act as required by statute[,]" the employee filed a complaint with the district court. *Skites*, ¶¶ 4-5. Blue Cross asserted that because the employee's complaint to the Human Rights Commission was untimely, her complaint in district court also was time-barred. *Skites*, ¶ 5.

¶11 This Court reaffirmed its decision from *Hash* that "timely filing before the [Human Rights Commission] is a prerequisite to filing a complaint alleging employment discrimination in district court." *Skites*, ¶ 10. We concluded that the employee was time-barred in the district court because she filed her complaint with the Human Rights Bureau 225 days after April 15, 1996—"the date stated in her complaint as the date of the most recent or continuing act of employment discrimination by Blue Cross." *Skites*, ¶ 11. The employee argued that she did not properly word her complaint; it should have stated that the discriminatory acts *began* on April 15, 1996. *Skites*, ¶ 13. We kept our consideration of the employee's timeliness to the dates found in her complaint, reasoning that allowing a complainant to change these dates would prevent the Human Rights Commission and district courts "from being able to determine whether a[] . . . complaint was timely filed." *Skites*, ¶ 15. Because the employee was time-barred from bringing her complaint to the Human Rights Commission, she subsequently was barred from bringing it before the district court. *Skites*, ¶ 20.

¶12 The District Court used the foregoing precedent to conclude that the 180-day period for Zolnikov to file her complaint started when she discovered the alleged discriminatory

7

practice on December 12, 2018, not when she was "injured or damaged under general claim accrual [principles]." Relying on *Hash*, the court decided that Zolnikov's claim for discrimination began to accrue when she was informed of the NBME's denial of her appeal for accommodations. The court found that Zolnikov's complaint supported this conclusion because it alleged that the "[d]ate of the most recent or continuing discrimination" was December 12, 2018. *See Skites*, ¶ 15.

¶13 On appeal, the parties do not dispute the facts. They argue only what date should trigger the start of the statutory time limit on Zolnikov's complaint to the Human Rights Bureau. Our precedent supports the conclusion that Zolnikov's claim started to accrue when she was notified of the NBME's denial of her appeal for accommodations on December 12, 2018. Similar to our reasoning in *Hash*, that Zolnikov might have "hoped" or "believed" the NBME would change its view and decide to provide her with accommodations when she arrived on the day of her test does not change that the alleged discriminatory act occurred, and she discovered it, on December 12, 2018. *See Hash,* 268 Mont. at 329, 886 P.2d at 444. Because she failed to timely file her complaint with the Human Rights Bureau, she also is barred from bringing her complaint to the District Court. *Skites*, ¶ 20. Further, her complaint notified the Bureau that the date of the most recent or continuing discrimination was December 12, 2018. *See Skites*, ¶ 15 (the date alleged as the date of discrimination within the Bureau complaint is the date that determines the timeliness of the complaint).

¶14     Zolnikov does not argue that she can prevail under our current precedent; she instead asks this Court to overrule *Hash* and *Skites* for wrongly interpreting the MHRA.  Zolnikov argues that *Hash* and *Skites* contradict the plain language of § 49-2-501, MCA.  She contends that the plain language of § 49-2-501, MCA, creates an ambiguity regarding when a claim should be brought because "occurred or was discovered" could mean "the 'earlier of' or 'either' the date of discrimination or the date that discrimination was discovered." Zolnikov maintains that this Court "implicitly adopted the 'earlier of' standard" in *Hash*. Zolnikov argues that this standard is at odds with the MHRA because the MHRA is meant to protect individuals from discrimination and should therefore be "liberally interpreted." Zolnikov contends that the intent of the Legislature was to interpret "or" to mean "either," so that the statutory limitation can run from either the date the discrimination occurred or was discovered.

¶15     Zolnikov next argues that we should overturn our precedent because she did not have a discrimination claim to bring until December 14, 2018.  Zolnikov maintains that the statute of limitations should not begin to run for an MHRA claim "until the complaining party is damaged."  She argues that she was not "aggrieved" until she took the test without accommodations.

¶16     "[O]nce the Court has placed a construction on statutory language, the Court prefers to 'leav[e] it to the Legislature to amend the law should a change be deemed necessary.'" *ALPS Prop. & Cas. Ins. Co. v. McLean & McLean, PLLP*, 2018 MT 190, ¶ 47, 392 Mont. 236, 425 P.3d 651 (Rice, J. dissenting) (quoting *Estate of Woody v. Big Horn Cty.*, 2016

9

MT 180, ¶ 20, 384 Mont. 185, 376 P.3d 127 (brackets in original embedded quotation) (citation omitted)). "Unless it appears that our interpretation is manifestly wrong, we will not overrule precedent regarding the construction of statutory language." *State v. Spagnolo*, 2022 MT 228, ¶ 8, 410 Mont. 457, 520 P.3d 330.

¶17 Zolnikov's argument that the disjunctive "or" makes the statute ambiguous does not persuade us that our decision in *Hash* was "manifestly wrong." In *Hash*, we determined that the occurrence of the alleged discriminatory act and its discovery happened the same day. We did not, as Zolnikov argues, "implicitly adopt[] the 'earlier of' standard" when determining the trigger date for the statute of limitations in discrimination claims. Zolnikov's argument that the plain language of § 49-2-501, MCA, creates ambiguous statutory time limits as demonstrated in *Hash* is not persuasive because we concluded in *Hash* that the employee's discovery of the alleged discrimination happened at the same time the alleged discriminatory act occurred.

¶18 Zolnikov's argument that the statute is ambiguous fails in light of our decision in *Powell v. Salvation Army*, 287 Mont. 99, 951 P.2d 1352 (1997), addressing the limitations period when the date of occurrence and discovery might not be the same. In *Powell*, we reversed the district court's M. R. Civ. P. 12(b)(6) dismissal of an employee's case for failure to file his complaint with the Human Rights Bureau within the statutory time limits. 287 Mont. at 106, 951 P.2d at 1357. At the time of termination, the employee was told that he was fired for "drinking on the job." *Powell*, 287 Mont. at 101, 951 P.2d at 1353. The employee alleged that he learned over a year later that he was terminated because of a

history of struggling with alcoholism. *Powell*, 287 Mont. at 101, 951 P.2d at 1353. The employer argued that the alleged unlawful discriminatory practice both occurred and was discovered by the employee the date of his termination. *Powell*, 287 Mont. at 104, 951 P.2d at 1355. We held that the district court should not have dismissed the complaint for failure to state a claim because the employee "may well be able to demonstrate that his cause of action did not accrue until sometime after his . . . termination and, therefore, that he complied with the [statutory] period." *Powell*, 287 Mont. at 106, 951 P.2d at 1357.

¶19    *Powell* demonstrates a situation where the time limit to bring a claim might start accruing later than when the alleged discriminatory act occurred because the plaintiff has not yet "discovered" the discrimination that would form the basis of a claim. If the employee could demonstrate he did not discover the reason that he was fired—history of struggling with alcoholism—until much later, then the date that would trigger untimeliness would be the date of discovery, not the date of his termination. *Powell*, 287 Mont. at 106, 951 P.2d at 1357. Situations like *Powell* make it clear that there is no ambiguity in § 49-2-501, MCA, regarding the start date for the statutory time limit to bring a discrimination claim.

¶20    We distinguished *Hash* in *Powell* because *Hash* was decided on a motion for summary judgment after the parties had an opportunity to present evidence. *Powell*, 287 Mont. at 106, 951 P.2d at 1357. Unlike Powell, however, Zolnikov has not alleged facts sufficient to demonstrate that her cause of action started to accrue sometime after she was denied accommodation. Zolnikov alleged in her complaint to the Human Rights Bureau

11

that she was discriminated against for a mental disability because she did not receive test-taking accommodations. The basis of her complaint is that she needed accommodations for the Step 1 exam but was denied despite providing sufficient evidence to support granting these accommodations. She did not "discover" that she was discriminated against for her mental disability on December 14, 2018. Nor did the alleged discrimination against her mental disability "occur" on December 14, 2018. The alleged discrimination occurred when Zolnikov was denied accommodations, and she "discovered" the discrimination at the same time. Zolnikov does not raise facts that could lead to differing conclusions about what date should trigger her claim under the MHRA.

¶21 Zolnikov next cites general rules of civil liability to argue that a person must first suffer certain consequences prior to bringing a claim. She maintains that a discrimination claim requires damage or injury. Because she was not damaged until she took the test without accommodation on December 14, 2018, she could not bring her claim on December 12, 2018. Zolnikov's argument does not account for the plain language of § 49-2-501, MCA, prescribing the statutory time limit as within 180 days of when the alleged unlawful discriminatory practice occurred or the claimant discovers it.

¶22 Finally, Zolnikov urges re-examination of *Hash* in light of the Supreme Court's later decision in *Green v. Brennan*, 578 U.S. 547, 136 S. Ct. 1769 (2016). The Supreme Court held in *Green* that the statutory time limit for a constructive-discharge claim could not start accruing until the employee resigned. *Green*, 578 U.S. at 550, 136 S. Ct. at 1774. The Court reasoned that a constructive-discharge claim "requires two basic allegations:

12

discriminatory conduct by the employer that leads to resignation of the employee." *Green*, 578 U.S. at 556, 136 S. Ct. at 1777-78. The Court stated that its decision on this matter was "consistent with the standard rule that a limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim." *Green*, 578 U.S. at 561, 136 S. Ct. at 1780.

¶23 Zolnikov argues that *Green* counsels a result different from our decision in *Hash*. But the Court in *Green* specifically differentiated a constructive discharge from situations like the one *Hash* considered. In *Green*, the Court referenced one of its previous cases considering a college faculty member who was denied tenure and given a one-year terminal contract. *Green*, 578 U.S. at 561, 136 S. Ct. at 1780 (citing *Del. State College v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 504 (1980)). In that case, the discrimination claim "accrued—and he could have sued—when the college informed him he would be denied tenure." *Green*, 578 U.S. at 561, 136 S. Ct. at 1780 (citing *Ricks*, 449 U.S. at 258, 101 S. Ct. at 504). The statute of limitations began to run when the plaintiff received notice that his employment would end—the date he was given the one-year terminal contract. *Green*, 578 U.S. at 561, 136 S. Ct. at 1780 (citing *Ricks*, 449 U.S. at 258, 101 S. Ct. at 504). The Court noted that Ricks's discrimination claim was different from a constructive-discharge claim because the end of employment is "not merely an inevitable consequence of the discrimination . . . it is an essential part of [a] constructive-discharge claim." *Green*, 578 U.S. at 561, 136 S. Ct. at 1780.

¶24	Zolnikov has not sufficiently likened her claim to the constructive discharge in *Green*. Zolnikov's having taken the test without accommodations on December 14, 2018, was "an inevitable consequence" of being denied accommodations, not an "essential part" of her discrimination claim. And her assertion that *Green* is at odds with our decision in *Hash* is not persuasive, considering that *Green* cited a case directly on point with the situation in *Hash* to exemplify why the accrual date for a constructive-discharge claim differs from other claims for discrimination.

¶25	Zolnikov has provided no persuasive argument that we were "manifestly wrong" and should overturn our precedent regarding the accrual of discrimination claims. Under that precedent, her complaint was untimely.

**CONCLUSION**

¶26	Zolnikov needed to file her complaint with the Human Rights Bureau no later than June 10, 2019. She did not file it until June 12, 2019. We therefore affirm the District Court's ruling upholding the Human Rights Commission and dismissing Zolnikov's petition.

/S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

14